Hubert H. HUMPHREY, III, as Attorney General for the State of Minnesota, Petitioner,

v.

UNITED STATES of America and the Interstate Commerce Commission, Respondent.

Greyhound Lines, Inc., Intervenor/Respondent.

No. 84–1038.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1984.

Decided Oct. 3, 1984.

Richard Gill Greyhound, for respondents.

Hubert H. Humphrey, III, Atty. Gen., Karl W. Sonneman, Sp. Asst. Atty. Gen., St. Paul, Minn., Cecelia Higgins, Washington, D.C. (argued), for Hubert H. Humphrey, III, as Attorney General for the State of Minnesota.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and HANSON *, Senior District Judge.

LAY, Chief Judge.

This petition for review is brought by the Attorney General of the State of Minnesota from an Interstate Commerce Commission decision granting Greyhound Lines, Inc., permission to discontinue bus service on three routes in Minnesota. We find that the ICC decision is supported by substantial evidence on the record as a whole and is not arbitrary, capricious, nor an abuse of discretion. Accordingly, we uphold the order of the ICC granting Greyhound permission to discontinue the service.

In December, 1982, Greyhound filed an application with the Minnesota Public Utilities Commission (MPUC) to discontinue service along eight routes in Minnesota. Public hearings were held and the Hearing Examiner recommended that Greyhound's entire request be denied. The state commission permitted Greyhound to discontinue service on four routes but refused to allow termination of its services over the remaining four routes. Greyhound sought reconsideration and the MPUC allowed Greyhound to discontinue one more route. As of May, 1983, Greyhound was required to continue service on only three of the original eight routes: Alexandria to Fergus Falls, via Elbow Lake; East Grand Forks to the Canadian border at Noyes; and Morris to Benson.

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

On August 4, 1983, Greyhound petitioned the ICC, under 49 U.S.C. § 10935, to review the MPUC's denial of permission to discontinue service over the three remaining routes. After plenary consideration and review of objections filed by interested parties, the ICC overturned the state commission's decision and authorized Greyhound to abandon service over the three routes. Thereafter this petition for review was filed in which the State urges that the ICC erred in failing to require service over the three routes in question. The Attorney General argues (1) the ICC was required to give deference to the findings of the state commission; (2) the ICC applied the wrong standard on review; and (3) the decision of the ICC was arbitrary and capricious and lacked substantial support in the record.

## I. ICC Review of MPUC

■ Section 10935 of Title 49 governs discontinuation of intrastate bus transportation. Section 10935(a) allows common carriers to appeal to the ICC state denials of permission to discontinue a route. There is no requirement under section 10935 that the ICC provide special consideration or deference to the findings of the state agency or commission. Sections 10935(e)(1)(A) and (e)(2)(A) specify the review standard and section 10935(g)(2) sets forth the particular factors to be considered. The findings of the state are not included.

1. Pub.L. 97–261, 96 Stat. 1102 (codified as amended in scattered sections of 49 U.S.C.).

2. In its decision, the ICC noted:
   Of particular significance in contemplating the impact of our decision is the basic tenet underlying the Bus Act that carriers should be able to adjust readily to changing market demands and the diverse requirements of the traveling public, consistent with the goals of the national transportation policy, by not being unduly hindered either in entering new areas in search of opportunities for profit or exiting those that prove to be unsuccessful. If a demand for transportation service exists in these Minnesota areas that will be left without service and can be supplied profitability [sic] in some form, new business will enter the field.

■ Notwithstanding the fact that ICC review under section 10935 is de novo, it is still within the jurisdiction of the Commission to consider and weigh the findings of the state commission. In the present case the ICC considered the MPUC record and its findings. *See* ICC Decision No. MC–1515 (Sub-No. 340) at 8 (Nov. 3, 1983). The congressional purpose of the Bus Regulatory Reform Act of 1982 [1] was to free interstate carriers from state created impediments that prevented them from abandoning unproductive routes.[2] *See* 49 U.S.C. § 10101(a)(3)(C); S.Rep. No. 411, 97th Cong., 2nd sess. 7–9, *reprinted in* 1982 U.S.Code Cong. & Ad.News 2308, 2314–16. We find no error in the treatment accorded the state's findings by the ICC.

## II. Standard Applied by ICC

■ There is no dispute that the routes in question were authorized prior to 1982. Section 10935(e)(1)(A) governs the proposed discontinuance of routes authorized before 1982. Under this standard the ICC must grant the discontinuance of routes unless it finds discontinuance is "not consistent with the public interest" or that the continuance of the routes would "not constitute an unreasonable burden on interstate commerce."

The Attorney General argues, however, that the ICC erroneously relied upon the subsection applicable to routes granted after August 1, 1982.[3] Under this section

ICC Decision No. MC–1515 (Sub-No. 340) at 11 (Nov. 3, 1983).

3. 49 U.S.C. § 10935(e)(2)(A):
   [T]he Commission shall grant such permission [to discontinue a route] unless the Commission finds, on the basis of evidence presented by the person objecting to the granting of such permission, that continuing the transportation, without the proposed discontinuance or reduction, will not constitute an unreasonable burden on interstate commerce. For the purposes of this paragraph, continuance of the transportation would not constitute an unreasonable burden on interstate commerce only if discontinuance or reduction of such transportation is not consistent with the public interest and the interstate and intrastate revenues from such service un-

denial of permission may occur only upon a finding that continuing the service would not be an unreasonable burden on interstate commerce. The State urges this standard provides greater discretion to the ICC to grant a discontinuance since it requires simply a finding that variable costs exceed revenues. The State further urges the ICC incorrectly applied this newer standard. We must respectfully disagree.

Although the ICC did not specifically cite the subsection involved, it did paraphrase the language of the pre-1982 section. In addition, the ICC discussed at length not only the cost factors· involved but also the non-cost factors.[4] Under section 10935(e)(1)(A) the burden is on the party opposing the discontinuance to prove either (1) discontinuance is inconsistent with the public interest, or (2) continuance will not be an unreasonable burden on interstate commerce. If the protestants fail to meet their burden, the ICC must allow the discontinuance.

Section 10935 also specifies the factors that the ICC must consider. Section 10935(g)(1) states:

> In making a finding under subsection (e)(1) of this section, the Commission shall accord great weight to the extent to which interstate and intrastate revenues received for providing the transportation proposed to be discontinued or reduced are less than the variable costs of providing such transportation * * *.

Under section 10935(g)(2), the ICC must also consider (1) the National Transportation Policy, 49 U.S.C. § 10101, (2) offers of financial assistance to subsidize the route, and (3) whether the transportation to be discontinued is the last carrier on the route and whether reasonable alternatives are available.

The ICC findings specifically consider the public interest factors involved. The Commission considered "the needs of passengers and shippers and the maintenance of intrastate bus services and [transportation] service to small communities and small shippers." ICC Decision No. MC–1515 (Sub-No. 340) at 10 (Nov. 3, 1983).

As directed by section 10935(g)(1), the Commission accorded great weight to Greyhound's cost figures. *Id.* at 3–5, 8–9. Greyhound claimed it was losing over $30,000 annually on two of the routes and nearly $60,000 on the third route. *Id.* at 3. MPUC contended that the figures were inflated. The ICC concluded that there were "some questions about the accuracy of some of the revenue estimates but overall the methods used and the estimates are reasonable." *Id.* at 9. This conclusion is neither arbitrary nor capricious and this court will not substitute its judgment for that of the ICC. The ICC also considered the national transportation policy, noted that no subsidy offers had been made, and considered possible alternatives as required by section 10935(g)(2). On one route, the ICC noted that alternative service was presently available. For the other two routes, the ICC suggested a lower cost form of transportation, such as van service, might be more feasible. *Id.* at 10–12. The Commission acknowledged the hardship discontinuance would cause, *id.* at 10, but determined that the protestants had failed to show that discontinuance was inconsistent with the public interest or that continuance would not impose an unreasonable burden on interstate commerce. *Id.* at 12.

## III.  Judicial Review of the ICC

The scope of judicial review of agency actions is defined by 5 U.S.C. § 706. This court may only set aside the ICC

---

der reasonable pricing practices are not less than the variable costs of providing the transportation proposed to be discontinued or reduced.

**4.**  As the ICC points out in its brief:

Whereas Congress did not state its intention explicitly, the statutory language makes clear that if a carrier's costs exceed its revenues on a post-Bus Act route [i.e. post-1982], the carrier has a right to discontinue the route. On the other hand, if the same is true for a pre-Bus Act route, the discontinuance is not automatic because Congress accorded "great weight" rather than conclusive weight to a losing revenue/cost ratio.

decision if it is arbitrary, capricious, an abuse of discretion or unsupported by substantial evidence on the record as a whole. 5 U.S.C. § 706(2). This standard of review is very narrow. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). The reviewing court is not to substitute its conclusions for those of the Commission. Our duty is simply to determine whether there is substantial support in the record, viewed as a whole, for the ICC's findings. *Illinois Central Railroad Co. v. Norfolk & Western Railway Co.*, 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966); *Universal Camera Corp. v. Labor Board*, 340 U.S. 474, 487–91, 71 S.Ct. 456, 464–66, 95 L.Ed. 456 (1951). This court has previously noted: "It is rare that a Commission order is not based on relevant factors or that the exercise of its expertise can be termed such an abuse of discretion as to require reversal by the courts." *Warren Transport, Inc. v. United States*, 525 F.2d 148, 151 (8th Cir.1975). *See also Erickson Transport Corp. v. ICC*, 728 F.2d 1057, 1062–63 (8th Cir.1984).

■ An examination of the record in this case reveals substantial evidence, on the whole, to support the ICC's decision to grant permission for discontinuance. The memorandum opinion issued by the ICC shows it applied the correct statutory standard and considered all required factors. There is no evidence that the Commission abused its discretion or did not otherwise act in accordance with law.

The decision of the Commission is affirmed and the petition for review is denied.