MISSOURI PUBLIC SERVICE
COMMISSION, Petitioner,

v.

INTERSTATE COMMERCE
COMMISSION,
Respondent.

Jefferson Lines, Inc., a Minnesota
Corporation, Intervenor for
Respondent.

No. 84–1036.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1984.

Decided June 7, 1985.

Eric Kendall Banks, St. Louis, Mo., for petitioner.

Evelyn Kitay, I.C.C., Washington, D.C., for respondent.

Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

The Missouri Public Service Commission (MPSC) seeks review of an order issued by the Interstate Commerce Commission (ICC) pursuant to § 17 of the Bus Regulatory Reform Act of 1982 (the Bus Act), 49 U.S.C. § 11501(e), granting Jefferson Lines, Inc. (Jefferson), authority to increase its Missouri intrastate regular route passenger fares by 35%. Jefferson intervenes in support of the ICC. For reversal the MPSC argues that the ICC erred in (1) failing to find that the MPSC adequately rebutted a statutory presumption, (2) failing to find that based on substantial evidence on the record as a whole lower intrastate bus fares imposed no unreasonable burden on interstate commerce, and (3) failing to recognize the proper relationship between state and federal regulatory powers. For the reasons discussed below, we affirm the order of the ICC and deny the petition for review.

In December 1982 Jefferson applied to the MPSC for an increase of approximately 35% in its Missouri intrastate regular route passenger rates.[1] In support of its request Jefferson submitted financial statements that showed its Missouri intrastate passenger fares yielded 6.95¢ per passenger mile while its comparable interstate fares yielded 11.46¢ per passenger mile. The cost study also indicated that Jefferson experienced a system-wide operating loss of $939,855 with an operating ratio of 106.990%, meaning that for every $1.00 earned, Jefferson incurred almost $1.07 in costs.

The Missouri portion of Jefferson's system-wide intrastate passenger operations loss amounted to $197,082 with an operating ratio of 122.1%. The MPSC audited Jefferson and agreed that Jefferson's intrastate fares were approximately 4.5¢ less per passenger mile than its interstate fares and admitted that intrastate regular route passenger costs exceeded revenue by $148,758. Nevertheless, MPSC denied the rate increase in its entirety.

---

**1.** It is noteworthy that Jefferson's application in the present case was filed after the MPSC in November 1982 denied in part Jefferson's request for a 27% rate increase in regular route passenger fares. In April 1983 the ICC overturned the MPSC and authorized the 27% increase. Only 6.3% of the original 35% increase is still disputed.

Although it denied the requested rate increase, the MPSC acknowledged that Jefferson's Missouri intrastate regular route passenger fares were less than comparable interstate fares and that Jefferson's Missouri intrastate regular route passenger operations were not profitable. However, the MPSC explained it had a longstanding policy of examining a company's entire intrastate operation—charter, express, and regular route passenger service—which in this instance revealed that Jefferson's entire Missouri operation provided sufficient revenue to offset losses on passenger traffic. In the MPSC's opinion it would have been unreasonable to increase intrastate regular route passenger rates in light of the excess revenue Jefferson earned from its intrastate charter service because it would have resulted in a return in excess of the cost of service.

Following the MPSC's denial of the requested rate increase, Jefferson filed with the ICC a request to review the MPSC's determination. Under the Bus Act, the ICC has authority to preempt state-set bus fares if it determines the state fares constitute an unreasonable burden on interstate commerce. 49 U.S.C. § 11501(e)(1).[2] Further, the Bus Act provides that if the ICC finds intrastate fares are lower than comparable interstate fares, the ICC shall presume the lower intrastate fares are an unreasonable burden on interstate commerce. This presumption, however, is rebuttable. *Id.* § 11501(e)(2)(A)(i); *see* note 2 *supra*.

In its petition for review before the ICC, Jefferson argued the denial of the rate increase caused it to subsidize the depressed intrastate fares with interstate revenue. The MPSC responded that it had overcome the rebuttable presumption that intrastate rates should equal interstate rates because (1) interstate rates were excessive and not a proper standard for evaluating intrastate rates and (2) excess earnings in intrastate charter traffic offset the losses in intrastate regular route passenger traffic. The MPSC further contended that Jefferson expected a rate of return on all its Missouri operations of 37.7% and that further fare increases would push that rate of return to an exorbitant level.

After full consideration of the state record and the pleadings, the ICC approved the fare increase. The ICC determined the record "did not reveal any differences in operating conditions, services, or costs between interstate and intrastate operations sufficient to rebut the statutory presumption." *Petition of Jefferson Lines, Inc.,* ICC Decision No. MC–C–10844, slip op. at 5 (Apr. 25, 1983). The ICC then concluded that the fare increase would reduce the disparity between Jefferson's intrastate and interstate fares and consequently reduce the burden of the cross-subsidy on interstate commerce. *Id.* at 7.

After the ICC denied an MPSC request to reopen the proceeding, this petition for review was filed. First, the MPSC argues

---

2. 49 U.S.C. § 11501(e) provides in part:
   (1) The Commission shall prescribe any rate, rule, or practice applicable to transportation provided entirely in one State by a motor common carrier of passengers providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title—
      (A) if the carrier has requested the department, agency, or instrumentality of such State having jurisdiction over such rate, rule, or practice for permission to establish such rate, rule, or practice and the request has been denied (in whole or in part) or the State authority has not acted finally (in whole or in part) on the request by the 120th day after the carrier made the request; and
      (B) if the Commission finds that the rate, rule, or practice in effect and applicable to

such intrastate transportation causes unreasonable discrimination against or imposes an unreasonable burden on interstate or foreign commerce.
   (2) For purposes of paragraph (1)(B) of this subsection, there shall be a rebuttable presumption that—
      (A) any rate, rule, or practice applicable to transportation provided by a motor common carrier of passengers entirely in one State imposes an unreasonable burden on interstate commerce if the Commission finds—
      (i) that such rate, rule, or practice results in the carrier charging a rate for such transportation which is lower than the rate such carrier charges for comparable interstate transportation of passengers....

that the ICC erroneously failed to find that the MPSC adequately rebutted the statutory presumption that lower intrastate rates create an unreasonable burden on interstate commerce. The MPSC contends the presumption is rebutted by substantial and competent evidence that (1) Jefferson's aggregate intrastate operations are lucrative and, consequently, the lower intrastate regular route passenger fares do not create an unreasonable burden on interstate commerce, and (2) the interstate fares are excessive and not an appropriate measure of reasonable intrastate rates. Like "bats of the law," the MPSC argues, the statutory presumption is overcome by the "sunshine of actual facts." *Mockowik v. Kansas City, St. Joe & Council Bluffs R.R.,* 196 Mo. 550, 94 S.W. 256, 262 (1906). Relying upon *Hertz v. Record Publishing Co.,* 219 F.2d 397 (3d Cir.), *cert. denied,* 349 U.S. 912, 75 S.Ct. 601, 99 L.Ed. 1247 (1955), the MPSC asserts that a presumption of law disappears when contrary evidence of fact in issue is introduced. We note, however, that the presumption of Pennsylvania common law at issue in *Hertz* was "very weak at best," *id.* at 399 n. 4, unlike the express presumption set forth in the Bus Act.

The ICC has narrowly interpreted the type of evidence necessary to rebut the statutory presumption. The ICC maintains that in the present case the evidence offered by the MPSC simply is not relevant because the legislative history and the statute itself suggest that only demonstrated differences in operating conditions, services, or costs between "comparable" intrastate and interstate operations may rebut the presumption.

"The construction of a statute by an agency charged with its administration is entitled to substantial deference." *South Dakota v. CAB,* 740 F.2d 619, 621 (8th Cir.1984), *citing United States v. Rutherford,* 442 U.S. 544, 553, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979), *and Northwest Airlines, Inc. v. Goldschmidt,* 645 F.2d 1309, 1315 (8th Cir.1981). "A deferential standard of review is particularly appropriate in a case such as this, in which the statute being interpreted is 'untried and new.'"

*South Dakota v. CAB,* 740 F.2d at 621, *citing Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* — U.S. —, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.,* 104 S.Ct. at 2782 n. 11. However, a construction that is tortured and contrary to the legislative intent will not be upheld. *SEC v. Sloan,* 436 U.S. 103, 118, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978). Basically, the question is whether the agency's construction of the statute is " 'sufficiently reasonable' to be accepted by a reviewing court." *Federal Election Comm'n v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981).

We are persuaded that the ICC's construction of the rebuttable presumption in § 11501(e) is reasonable and consistent with the plain language and the legislative history of the Bus Act. In a similar case involving ICC preemption of state-regulated intrastate bus fares, the Second Circuit agreed with the ICC that only differences between intrastate and interstate operating costs and conditions were relevant in determining whether the disparity between intrastate and interstate rates burdened interstate commerce. *Commissioner of Transportation v. United States,* 750 F.2d 163, 170, 171 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985). Indeed, a clearly stated goal of the Bus Act was the elimination of state regulation which kept intrastate fares artificially low and forced bus companies to subsidize intrastate operations by over-

charging interstate passengers. *Id.* at 169. Congress had found that "a large number of [intrastate] routes ... are cross-subsidized by more profitable interstate routes and charter operations," and that "the carrier who is unable to raise rates high enough on its intrastate route is forced to charge its interstate travelers an inequitable price to remain financially viable." S.Rep. No. 411, 97th Cong.2d Sess. 8, *reprinted in* 1982 U.S.Code Cong. & Ad. News 2308, 2315.[3] Furthermore, government studies incorporated in the Bus Act's legislative history focus solely upon fare discrepancies between comparable intrastate and interstate services. *Id.* at 9–10, *reprinted in* 1982 U.S.Code Cong. & Ad. News at 2316–17. Finally, we must not overlook the statutory language that expressly refers to intrastate rates lower than those charged for "comparable interstate transportation of passengers." 49 U.S.C. § 11501(e)(2)(A)(i).

■ We uphold the ICC's construction of the Bus Act and its finding that MPSC did not introduce evidence revealing differences in operating conditions between intrastate and interstate services sufficient to rebut the presumption that the rate disparities imposed an unreasonable burden on interstate commerce.

We also agree with the ICC that consideration of the MPSC's conclusory allegation that interstate rates are excessive is inappropriate in this proceeding. First, excessive interstate rates do not evidence a difference between interstate and intrastate operating costs or conditions. Second, the record developed in the state proceedings does not permit a full analysis and review of the interstate rates. Furthermore, the MPSC assertion that the interstate subsidy of intrastate fares is justified because interstate rates are too high contradicts the clearly stated congressional decision to diminish cross-subsidies. If the MPSC wishes to challenge Jefferson's interstate rates, the MPSC may, as the ICC

suggests, file a complaint pursuant to 49 U.S.C. § 11701.

■ The MPSC's second argument that the ICC erroneously failed to find that substantial evidence on the record as a whole indicated Jefferson earned more than its cost of service and therefore no unreasonable burden on interstate commerce was created is without merit. For the most part, this argument is based upon the MPSC's construction of the statutory provisions that we rejected in the preceding discussion. Without restating the entire argument and the evidence in its support, we hold that, given the ICC's reasonable construction of the Bus Act's rebuttable presumption, to which we defer, the ICC's findings were supported by substantial evidence on the record as a whole.

■ The MPSC's related contention—that even if the ICC disagreed with the MPSC's reasons, the ICC should not have preempted state regulatory authority—is encompassed by the MPSC's final argument that the ICC has unconstitutionally failed to recognize the proper relationship between state and federal agencies. The MPSC does not argue that the preemption provisions of the Bus Act are unconstitutional. Rather, MPSC argues that the ICC "attempts to usurp the residual power which the Congress left the States regarding intrastate ratemaking." Brief for MPSC at 33. Although the exact scope of the ICC's preemption authority is not precisely defined in the Bus Act, the language of the statute and its legislative history leave little question that this authority is substantial. *See Commissioner of Transportation v. United States*, 750 F.2d at 169. The Bus Act gives the ICC express authority to "prescribe any rate, rule, or practice" if it determines that the applicable intrastate rate "causes unreasonable discrimination against or imposes an unreasonable burden on interstate or foreign commerce." 49 U.S.C. § 11501(e)(1)(B). As noted by the ICC, nothing in the language of § 11501(e) requires that the ICC

---

**3.** For an interesting history of the bus industry and the Bus Act, see Thoms, *Unleashing the*   *Greyhounds—The Bus Regulatory Reform Act of 1982,* 6 Campbell L.Rev. 75 (1983).

give special deference to the state's methodology or findings. In *Humphrey v. United States*, 745 F.2d 1166 (8th Cir.1984), this court reviewed an ICC order granting discontinuance of three Minnesota intrastate bus routes. In that case we found that under § 10935 of the Bus Act there was no requirement that the ICC give special consideration or deference to the state commission findings. *Id.* at 1166. Given our decision in *Humphrey* and the Bus Act's expansive preemption authority, we find no unconstitutional usurpation of state regulatory power in the ICC's preemption of state regulatory authority pursuant to the Bus Act.

Having determined that the ICC's construction of the Bus Act's rebuttable presumption is reasonable, we must next decide whether the ICC's decision is arbitrary, capricious, an abuse of discretion or unsupported by substantial evidence on the record as a whole.[4] *Humphrey v. United States*, 745 F.2d at 1170. "This standard of review is very narrow." *Id., citing Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). "This court cannot 'substitute its judgment for that of the agency.'" *Cartersville Elevator, Inc. v. ICC*, 724 F.2d 668, 673 (8th Cir.) (*citing Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)), *aff'd on re-*

*hearing en banc*, 735 F.2d 1059 (1984). The reviewing court is simply to determine whether there is substantial support in the record, viewed as a whole, for the ICC findings. *Humphrey v. United States*, 745 F.2d at 1170. "It is rare that a Commission order is not based on relevant factors or that the exercise of its expertise can be termed such an abuse of discretion as to require reversal by the courts." *Warren Transport, Inc. v. United States*, 525 F.2d 148, 151 (8th Cir.1975); *see also Erickson Transport Corp. v. ICC*, 728 F.2d 1057, 1062–63 (8th Cir.1984).

In the present case undisputed evidence demonstrated that Jefferson's intrastate regular route passenger fares were lower than comparable interstate fares, that intrastate regular route passenger costs exceeded revenues, and that the requested rate increase would not entirely eliminate the disparity between intrastate regular route passenger costs and revenues. The ICC determined that the lower intrastate fares imposed an unreasonable burden on interstate commerce.

Our review of the record in this case reveals substantial evidence, on the whole, to support the ICC decision preempting state regulatory authority and granting Jefferson authority to raise its Missouri intrastate regular route passenger fares. There is no evidence that the ICC abused its discretion or did not otherwise act in accordance with law.

---

**4.** We reject the MPSC's argument that ICC preemption of intrastate bus ratemaking decisions is subject to strict judicial scrutiny. *See Commissioner of Transp. v. United States*, 750 F.2d 163, 169 (2d Cir.1984). The MPSC relies upon several decisions involving intrastate rail ratemaking decided in an era when intrastate regulation was "primarily the concern of the states." *Chicago, M., St. P. & P. R.R. v. Illinois*, 355 U.S. 300, 305, 78 S.Ct. 304, 307, 2 L.Ed.2d 292 (1958).

This limited authority was expanded by the Staggers Rail Act of 1980, Pub.L. 96–448, 94 Stat. 1895 (codified in various sections of 11, 45, and 49 U.S.C. (1982)), which established federal preemption over intrastate rail rates. As the District of Columbia Circuit Court of Appeals recently explained:

Traditionally, since the Supreme Court's decision three decades ago in *North Carolina v.*

*United States*, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760 (1945), the rule has been that ICC preemption of state authority must be strictly scrutinized. That pre-Staggers Act standard, however, is no longer controlling, because Congress has now explicitly granted the Commission authority over intrastate rates. *Congress* has preempted state regulation to the extent prescribed by the Staggers Act. The old *North Carolina* standard is obsolete, and the proper standard is one deferential to the economic expertise of the ICC.

*Utah Power & Light Co. v. ICC*, 241 U.S.App.D.C. 284, 747 F.2d 721, 736 (1984) (emphasis in original). *Cf. Texas v. United States*, 730 F.2d 339 (5th Cir.) (preemption provisions of Staggers Act do not violate constitution), *cert. denied*, —— U.S. ——, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984).

Accordingly, the decision of the ICC is affirmed and the petition for review is denied.