**STATE CORPORATION COMMISSION for the STATE OF KANSAS, Petitioner-Appellant,**

v.

**INTERSTATE COMMERCE COMMISSION, and the United States of America, Respondents-Appellees,**

**and**

**K.G. Lines, Inc. and Greyhound Lines, Inc., Intervenors-Respondents.**

Nos. 84–2489, 85–1776.

United States Court of Appeals, Tenth Circuit.

May 29, 1986.

John Jay Rosacker (Brian J. Moline, Kansas Corp. Commission, with him on brief), Topeka, Kan., for petitioner-appellant.

Louis Mackall (Charles F. Rule, John J. Powers, III, George Edelstein, Robert S. Burk, Ellen D. Hanson and Essie F. Stevens, I.C.C., with him on the brief) of Washington, D.C., for respondents-appellees.

Lat J. Celmins, Phoenix, Ariz., for intervenor-respondent Greyhound Lines, Inc.

Glen D. Young, Jr., Gott, Young & Bogle, P.A., Wichita, Kan., on brief, for intervenor-respondent K.G. Lines, Inc.

Before HOLLOWAY, Chief Judge, and ANDERSON and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

In these two consolidated petitions for review, the State Corporation Commission for the State of Kansas seeks review of orders of the Interstate Commerce Commission allowing rate increases sought by K.G. Lines, Inc., in our No. 84–2489, and by Greyhound Lines, Inc., in our No. 85–1776. These rate increases, in each instance, had been previously denied by the Kansas Corporation Commission. In each case, the gist of the petition is that in granting the rate increase, the ICC acted arbitrarily, capriciously, and in violation of applicable law. We are here concerned with section 17 of the Bus Regulatory Reform Act of 1982, Pub.L. No. 97–261, 96 Stat. 1102, 1117–20 (1982) (codified at 49 U.S.C. § 11501(e)).

The Bus Act of 1982 initiated a number of significant and far-reaching reforms in the regulation of the motor carrier passenger industry. In an effort to reduce government regulation, promote competition, and make available more responsive service to the traveling public, Congress significantly eased bus entry and exit provisions and made it easier for bus carriers to increase their rates. Of importance to the present proceedings, Congress authorized the ICC to preempt state regulation of certain *intrastate* bus rates. In this connection, Congress noted that state regulatory agencies tended to require bus companies to maintain intrastate rates at levels far below comparable interstate levels.[1] Moreover, Congress was concerned with

the problem of whether higher interstate rates were in fact subsidizing the generally lower intrastate rates for comparable service. *See* S.Rep. No. 97–411, 97th Cong., 2d Sess. 7–11, *reprinted in* 1982 U.S.Code Cong. and Ad.News 2308, 2314–2318.

The Bus Act provides, *inter alia,* that the ICC shall fix the rate for intrastate passenger service when the rate set by a state regulatory agency imposes an unreasonable burden on interstate commerce. In this particular connection, 49 U.S.C. § 11501(e)(2)(A)(i) establishes a rebuttable presumption that a state imposed intrastate rate unreasonably burdens interstate commerce if it "results in the carrier charging a rate for such [intrastate] transportation which is lower than the rate such carrier charges for comparable interstate transportation of passengers." In other words, the statute provides that once a carrier shows that its intrastate rates are lower than its interstate rates for comparable transportation, the burden is on the state agency setting the lower rate, or conceivably an objecting party, to rebut the presumption by showing that the rate disparity is justified.

In the instant cases, both K.G. Lines, Inc. and Greyhound Lines, Inc. filed applications for rate increases for intrastate service with the Kansas Corporation Commission. After hearing, both applications were denied.[2] Thereafter, pursuant to 49 U.S.C. § 11501(e)(3)(A), both K.G. Lines and Greyhound Lines filed separate "applications for prescription" with the ICC. Based on the applications and the records made before the Kansas Corporation Commission, the ICC granted the rate increases sought by both carriers. The Kansas Corporation Commission now seeks review of the ICC orders pursuant to 28 U.S.C. §§ 2321, 2342.

As we understand it, all agree that the intrastate rates here involved of both carriers are below their interstate rates for

---

1. We are here concerned, by way of example, with one bus with one driver and the same supporting personnel carrying simultaneously interstate and intrastate passengers.

2. K.G. Lines, Inc., actually received a small increase from the Kansas Corporation Commission, although most of its requested increase was denied.

comparable passenger service, and that, such being the case, there is, under the statute, a rebuttable presumption that such lower rates impose an unreasonable burden on interstate commerce. The dispute is over whether this rebuttable presumption has been in fact rebutted by the Kansas Corporation Commission. The ICC, by its order and decision, found that the Kansas Corporation Commission had not rebutted the presumption, and, in this regard, the Kansas Corporation Commission contends in this Court that in each instance the ICC acted arbitrarily, capriciously, and in violation of applicable law.

As concerns Greyhound's application, the ICC found that its intrastate rates were lower than its interstate rates for comparable service, thus triggering the statutory presumption. In its consideration of whether the Kansas Corporation Commission had rebutted this presumption, the ICC stated that the most probative and relevant evidence for rebutting the presumption arising from lower intrastate rates is evidence of "distinguishing factors in operating conditions, services, or costs associated with providing intrastate as opposed to interstate service." The ICC further noted that the Kansas Corporation Commission had attempted to rebut the presumption through the use of operating ratios, i.e., cost of service expressed as a percentage of revenue. The ICC was not persuaded by such evidence, observing that operating ratios are unreliable since they involve a number of highly arbitrary accounting assumptions for allocating revenues and expenses between interstate and intrastate business operations.

In connection with the K.G. Lines application for a rate increase, the ICC also found that its current intrastate rates, and indeed even its proposed rates, were significantly lower than its comparable interstate rates, and that such triggered the rebuttable presumption that its current intrastate rates imposed a burden on interstate commerce. That K.G.'s intrastate rates

are substantially lower than its interstate rates for comparable service is not in dispute. The real question is whether the record made before the Kansas Corporation Commission is such that the ICC was compelled to find that the rebuttable presumption created by statute has been rebutted. There was evidence before the Kansas Corporation Commission showing a comparison of revenue vis-a-vis cost of intrastate and interstate passenger service, but the ICC held that such did not rebut the statutory presumption.

■ In reviewing a "preemptive" order of the ICC prescribing an intrastate rate higher than that allowed by a state regulatory agency, our scope of review is a narrow one. *See Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981); *Philadelphia Gear Corp. v. Federal Deposit Insurance Corp.*, 751 F.2d 1131, 1135 (10th Cir.1984), *cert. granted*, —— U.S. ——, 106 S.Ct. 245, 88 L.Ed.2d · 253 (1985). By 49 U.S.C. § 11501, Congress expressly delegated broad authority to the ICC. In this regard, the Second Circuit in *Commissioner of Transportation of the State of New York v. United States*, 750 F.2d 163 (2d Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2019, 85 L.Ed.2d ·301 (1985), spoke as follows:

> In passing the Bus Act in 1982, Congress was concerned that regulation in general and state regulation in particular had substantially undermined the financial base of the bus industry.... Congress realized that state regulation often kept intrastate fares at artificially low levels and forced bus companies to continue operating unprofitable intrastate routes. Congress appreciated that these practices effectively forced bus companies to subsidize intrastate operations by overcharging interstate passengers and realized that under the Act, the ICC necessarily would preempt state regulation in order to eliminate these burdens on inter-

state commerce.... Thus, Congress has made a decision to allow substantial preemption of state regulatory authority ... and the role of this Court in reviewing such a decision is clearly different from that it assumes in considering Commission action which is taken pursuant to less explicit or less broad authority. We therefore hold that the rigid requirements of *North Carolina v. U.S.* [325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760 (1945)] do not apply to the Commission's decisions made pursuant to the Bus Act. Rather, review of the Commission's decision herein is governed by 5 U.S.C. § 706, and we can "set aside agency action, findings, and conclusions [only if] found to be ... arbitrary [or] capricious...." Judging the Commission's action by this standard, we hold that it must stand.

*Id.* at 169 (first bracketed material ours).

We agree with this view articulated by the Second Circuit. Accordingly, in applying this rationale to the cases before us, ICC has the authority to require the Kansas Corporation Commission to explain why intrastate rates are lower than interstate rates. The Kansas Corporation Commission failed to do so. The ICC orders relating to both K.G. Lines and Greyhound are, therefore, neither arbitrary nor capricious and are in accord with Congressional intent as embodied in the Bus Reform Act of 1982. In so deciding, we follow the above-quoted ruling by the Second Circuit and the rulings of other circuits in similar cases. *Missouri Public Service Commission v. Interstate Commerce Commission,* 763 F.2d 1014 (8th Cir.1985); *Commissioner of Transportation of the State of New York v. United States,* 750 F.2d 163 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Public Service Commission of West Virginia v. Interstate Commerce Commission,* 749 F.2d 32 (4th Cir.1984) (unpublished opinion).

Decisions affirmed.