**M.M. WINTER, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Burlington Northern Railroad Company, Intervenor-Respondent.**

**No. 86–1704.**

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1987.

Decided Sept. 16, 1987.

Gordon P. MacDougall, Washington, D.C., for petitioner.

John J. McCarthy, Jr., Washington, D.C., for respondents.

Peter M. Lee, Fort Worth, Tex., for intervenor-respondent.

Before ARNOLD and WOLLMAN, Circuit Judges, and BOGUE,\* Senior District Judge.

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

WOLLMAN, Circuit Judge.

This is a petition to review a decision of the Interstate Commerce Commission granting Dakota Rail, Inc. (DRI) an exemption from the regulatory requirements under the Interstate Commerce Act, 49 U.S.C. § 10901, with respect to DRI's operation of a 43.66 mile railroad line between Hutchinson and Wayzata, Minnesota (the "Hutchinson line"). *Dakota Rail, Inc.—Petition for Exemption From, 49 U.S.C. 10901, 10903, and 11301,* Finance Docket No. 30721 (Oct. 31, 1985), *petition to reopen denied,* April 3, 1986, (LEXIS, TRANS library, ICC file). The Hutchinson line had previously been owned and operated by Burlington Northern Railroad Co. (BN) before it abandoned the line and sold it to DRI. In addition to excepting DRI from the regulatory requirements under section 10901, the Commission further declined to impose any employee protective conditions on DRI with respect to its operation of the Hutchinson line.[1] We have jurisdiction to review this decision under 28 U.S.C. § 2321 and § 2342(5).

## I.

On June 28, 1985, BN filed with the Commission a formal application to abandon the Hutchinson line. It also notified all affected shippers and other interested parties of its intent to abandon. The application went unopposed, and on August 12, 1985, the Commission authorized BN to abandon the line, subject to the *Oregon Short Line* employee protective conditions.[2] BN then canceled tariffs, terminated service, and notified the Commission that abandonment had occurred.

When shippers on the Hutchinson line learned of BN's proposed abandonment, they formed the Central Prairie Railway Association (CPRA) to devise a way to continue rail service. Following negotiations between CPRA, local rail authorities, and BN, a plan was proposed for an experienced operator to take over the Hutchinson line.

DRI was the experienced operator chosen to operate the property. Because of DRI's limited funds, it negotiated a conditional sale agreement with BN. Under the agreement, DRI would lease the line from BN for five years for a nominal sum and then purchase it, provided that all terms of the agreement had been met.

After the negotiations were completed, DRI filed a petition seeking exemption from the requirement under section 10901 of prior approval for the initiation of operations over an abandoned rail line. In granting DRI's exemption request the Commission did not impose employee protective conditions on DRI's operation of the line. The Commission found that the requested exemption was fully consistent with the stated purposes of 49 U.S.C. § 10505,[3] and that the imposition of employee protection was unnecessary.[4]

---

1. The Commission did, however, impose labor protective conditions on DRI's potential future discontinuance under 49 U.S.C. § 10903.

2. Under 49 U.S.C. § 10904(b), if no protest is filed within thirty days of the date that an abandonment application is filed, the Commission must issue a certificate within forty-five days after the application is filed, which permits abandonment to occur within seventy-five days after the application is filed.

3. 49 U.S.C. 10505 states in pertinent part that:
   (a) * * * the Commission shall exempt a * * * transaction or service when the Commission finds that the application of a provision of this subtitle—
   (1) is not necessary to carry out the transportation policy of section 10101a of this title; and

   (2) either (A) the transaction or service is of limited scope, or (B) the application of a provision of this subtitle is not needed to protect shippers from the abuse of market power.

4. The Commission has consistently rejected requests to impose labor protections on acquisitions and operations under section 10901. It has stated that labor protective conditions are not ordinarily warranted in such transactions because: (1) where abandoned lines are involved, protective conditions have already been imposed on the abandoning-selling carrier; (2) the transaction provides for the continuation or restoration not only of operations, but also of jobs for rail employees; and (3) imposing additional employee protective conditions would diminish, if not negate, the economic justification for the transfer and thereby jeopardize the transaction and continued operations. *See, e.g.,*

United Transportation Union (UTU) filed a petition to reopen the Commission's decision exempting DRI from section 10901, contending that because there had been no bona fide abandonment of the Hutchinson line the Commission had erred in failing to impose mandatory employee protective conditions on DRI's operation of the rail line.

Finding no changed circumstances, material error, or new evidence, the Commission denied UTU's petition to reopen. 49 C.F.R. § 1115.3(b). It found that BN had complied with the regulatory requirements and had properly abandoned the Hutchinson line. The Commission stated that "BN has been forthright about its intentions, revealing from the outset its plan to abandon its line and arrange for another entity to provide service." The Commission further affirmed its decision to refuse to impose employee protective conditions on the transaction. It found that UTU had failed to make the necessary "exceptional showing" required for the imposition of labor protection in a section 10901 transaction.[5]

UTU thereafter instituted this appeal. BN was permitted to intervene. DRI elected not to participate in the appeal.

## II.

The principal dispute in this case centers on the Commission's failure to impose employee protective conditions on DRI's commencement of operations over the Hutchinson line. Petitioner, the General Chairman for the UTU,[6] argues that DRI's purchase and operation of the line was and "acquisition" pursuant to 49 U.S.C. § 11343 that subjected the transaction to the mandatory employee protective conditions guaranteed under 49 U.S.C. § 11347. UTU contends that to satisfy the requirements of section 11347 the employee protective conditions fashioned in *New York Dock Ry.—Control —Brooklyn E. Dist. Terminal,* 360 I.C.C. 60, *aff'd sub nom. New York Dock Ry. v. United States,* 609 F.2d 83 (2d Cir.1979), should be imposed.[7]

UTU acknowledges that BN employees affected by the abandonment are protected by the employee protective conditions found in *Oregon Short Line R. Co.— Abandonment—Goshen,* 360 I.C.C. 91, 98 (1979).[8] UTU contends, however, that the *New York Dock* conditions would give BN employees more protection than the *Oregon Short Line* conditions because DRI would have to participate in employee negotiations with former BN employees and perhaps hire them to work on the line.

Our standard of review of a Commission decision is narrow. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–47, 42 L.Ed.2d 447 (1974). We may set aside a Commission decision only if it is arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence on the record as a whole. 5 U.S.C. § 706(2); *Humphrey v. United States,* 745 F.2d 1166 (8th Cir.1984). "The reviewing court is not to substitute its conclusions for those of the Commission. Our duty is simply to

---

*Class Exemption for the Acq. and Oper. of R. Lines Under 49 U.S.C. 10901,* ex parte No. 392 (Dec. 19, 1985) (LEXIS, TRANS library, ICC file); *Tennessee Ry. Co.—Central Abandonment,* 334 I.C.C. 235 (1969).

**5.** The Commission has stated that in section 10901 cases it would consider imposing employee protective conditions where a petitioner makes an exceptional showing of circumstances justifying protection. *See, Class Exemption, supra.*

**6.** UTU represents the railroad personnel formerly employed by BN on the Hutchinson line.

**7.** Section 11347 requires that when one rail carrier acquires another rail line pursuant to section 11343, the new carrier must make fair arrangements so that the employees of the af-

fected rail carrier will not "be in a worse position related to their employment as a result of the transaction during the 4 years following" final approval by the Commission. In transactions under section 11343 the Commission has imposed on the acquiring carrier the level of employee protection found in *New York Dock Ry.—Control—Brooklyn E. Dist. Terminal,* 360 I.C.C. at 76. These benefits include a displacement allowance, a dismissal allowance, moving expenses, the continuation of fringe benefits, and priority in rehiring by the abandoning rail carrier.

**8.** The Commission imposed the *Oregon Short Line* conditions on BN when it authorized BN to abandon the Hutchinson line.

determine whether there is substantial support in the record, viewed as a whole, for the ICC's findings." *Humphrey,* 745 F.2d at 1170.

The imposition of employee protective conditions on the acquiring entity is mandatory for any railway transaction that is a "consolidation," "merger," or "acquisition of control" pursuant to 49 U.S.C. § 11343. 49 U.S.C. § 11347; *see Black v. I.C.C.,* 762 F.2d 106, 110 (D.C.Cir.1985). No "consolidation," "merger," or "acquisition of control" is present, however, where the transaction involves the takeover of a line that has been abandoned within the meaning of 49 U.S.C. § 10903. *Black,* 762 F.2d at 111. An abandoned line no longer functions in interstate or foreign commerce, and its acquisition is therefore not subject to Commission jurisdiction. *Application Proc.—Construct, Acq. or Oper. R. Lines,* 365 I.C.C. 516 (1982); *Plymouth Short Line, Ltd.—Operation Exemption—In Plymouth, IN,* Finance Docket No. 30654 (May 28, 1985) (LEXIS, TRANS library, ICC file). In these circumstances, the operation of the rail line by the new carrier is subject to section 10901. *Black,* 762 F.2d at 111. "Unlike transactions under 49 U.S.C. § 11343, where imposition of labor protective conditions is mandatory, the decision whether to impose such conditions on the acquiring entity in any transaction under 49 U.S.C. § 10901 falls within the Commission's discretionary authority." *Id.*

UTU asserts that BN's abandonment, coupled with DRI's lease and operations of the Hutchinson line, was a subterfuge to avoid the application of section 11343 and the imposition of the mandatory employee protective conditions under section 11347. UTU contends that the Commission erred in looking only at compliance with its formal abandonment requirements in concluding that BN had abandoned the Hutchinson line.[9] UTU asserts that the Commission must look to additional indicia and specifically find extrinsic or independent intent of the abandoning carrier to cease permanently or indefinitely all transportation service on the relevant line. UTU contends that because it was simultaneously negotiating for a replacement carrier at the time it filed its abandonment application, BN had no intent to cease all service over the Hutchinson line.

We cannot say that the Commission's finding that BN had abandoned the Hutchinson line is not supported by substantial evidence. Since there were no protests to BN's abandonment application, the Commission was obligated to grant it under 49 U.S.C. § 10904(b). UTU's reliance on *I.C.C. v. Chicago & N.W. Transp. Co.,* 533 F.2d 1025 (8th Cir.1976), is misplaced. In that case the court inquired into the intent of the carrier to determine whether the carrier had permanently ceased all service over the line and thereby illegally abandoned the line. Here, by contrast, BN had filed an abandonment application, received Commission abandonment authorization, and followed all the Commission's formal abandonment requirements. In such cases, the carrier's intent to abandon the line is clear from its regulatory compliance, and thus there is no need for an additional extrinsic finding of intent.

We also cannot say that the Commission erred in not imposing employee protective conditions on DRI's takeover of the Hutchinson line. As stated, the imposition of employee protective conditions is discretionary. UTU has shown no exceptional circumstances justifying the imposition of those protections. Moreover, BN's employees who were harmed by the abandonment are already protected by the *Oregon Short Line* conditions.

The Commission's order is affirmed.

---

9. The abandonment statute requires only that the Commission find that the present or future public convenience and necessity require or permit the abandonment. 49 U.S.C. § 10903. Once the Commission makes this finding and issues a certificate, the carrier may abandon the line by following the agency's formal requirements of canceling all applicable tariffs and discontinuing service. A letter notifying the Commission of the abandonment is no longer required. *Common Carrier Status of States, State Agencies and Instrumentalities, and Political Subdivisions,* 363 I.C.C. 132, 135 n. 2 (1980), *aff'd sub nom. Simmons v. I.C.C.,* 697 F.2d 326 (D.C.Cir.1982).