**M.M. WINTER; R.L. Marceau; D.B. Snyder, (General Chairmen for United Transportation Union on lines of Burlington Northern Railroad Company), Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION; United States of America, Respondents.**

**Burlington Northern Railroad Company; MN Commercial Railway, Intervenor.**

No. 92–1800.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1992.

Decided May 7, 1993.

Rehearing and Rehearing En Banc Denied June 15, 1993.

Gordon P. MacDougall, Washington, DC, argued, for petitioners.

Laurence H. Schecker, Washington, DC, argued (Charles A. James, John J. Powers, III, John P. Fonte, Robert S. Burk, John J. McCarthy, Jr., and Laurence H. Schecker, on brief), for respondents.

Janice J. Barber, Fort Worth, TX, argued (Douglas J. Babb, Janice J. Barber and Ethel A. Allen, on brief), for intervenor Burlington Northern.

Eugenia Langan, Washington, DC, argued (Ralph J. Moore, Jr., and Eugenia Langan, on brief), for intervenor MN Commercial.

Before McMILLIAN, BOWMAN and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

The United Transportation Union (UTU) seeks review of the Interstate Commerce Commission's (ICC) decision to grant an exemption for the transfer of trackage rights from Burlington Northern Railroad Co. (Burlington) to Minnesota Commercial Railway, Inc. (Commercial). *Minnesota Commercial Ry.—Trackage Rights Exemption—Burlington N. R.R.*, 8 I.C.C.2d 31 (1991) (*Minnesota*). UTU petitions for review of the ICC's order, arguing: (1) the ICC erred in refusing to apply the objectives of the Rail Transportation Policy (RTP); (2) the ICC's decision is arbitrary and capricious; and (3) the ICC's findings regarding employee conditions are invalid. This is a matter of original jurisdiction for the Court of Appeals pursuant to 28 U.S.C. § 2342(5). As detailed below, we affirm the ICC's decision to grant an exemption and deny the petition for review.

Commercial filed a notice of exemption with the ICC under the trackage rights class exemption in order to acquire certain trackage rights from Burlington in the St. Paul, Minnesota, area. Commercial agreed to acquire "bridge" and "local" trackage rights from Burlington. "Bridge" trackage rights do not permit tenant railroads to serve shippers along the line, while "local" or "extension" trackage rights do grant permission to serve shippers along the line. Both railroads offered service on the lines until many shippers switched to Commercial for their shipping needs. The drop in Burlington's business caused it to terminate permanent crew assignments on the lines; however, the displaced employees took new positions in the Twin Cities area or received monetary benefits under the *Norfolk & Western* labor protective conditions which guaranteed affected employees up to six years of income protection. *Norfolk & W. Ry.—Trackage Rights—Burlington N. R.R.*, 354 I.C.C. 605 (1978), *as modified by Mendicino Coast Ry.—Lease and Operate*, 360 I.C.C. 653 (1980), *aff'd sub nom. Railway Labor Executives' Ass'n v. United States*, 675 F.2d 1248 (D.C.Cir.1982). In response, UTU petitioned the ICC, seeking to revoke the trackage rights class exemption for the transaction between Commercial and Burlington. The ICC denied UTU's petition and granted the exemptions.

On appeal, UTU argues that the ICC erred by not applying RTP policies to all provisions of the Interstate Commerce Act, including those dealing with the trackage rights class exemption. UTU contends that the criteria of the RTP, other than those dealing with competition, are relevant and that all sections of the Interstate Commerce Act must be administered with regard to the RTP goals. UTU argues the RTP is not restricted to exemption cases. In addition, UTU contends the ICC's determination that the role of the RTP should be the same for revocation of an exemption as it is for granting an exemption is inconsistent, arbitrary, and capricious.

Burlington, Commercial, and the ICC argue the ICC's interpretation of the statute is correct and is entitled to enforcement. Burlington, Commercial, and the ICC contend that the ICC, when it acts on a request to revoke an exemption, does not have to evaluate the exemption under all fifteen factors of the RTP. Rather, they argue the ICC's mandate is limited to determining whether the application of the statutory provision from which the transaction is exempt is "necessary to carry out the transportation policy of § 10101(a)." 49 U.S.C. § 10505(d). Burlington, Commercial, and the ICC assert the ICC measured the revocation of the exemption by the "yardstick" of the RTP which is consistent with the ICC's practice in exemption proceedings.

The ICC decided that the same analysis should apply in determining whether revocation of an exemption is proper and whether an exemption is proper at the outset of a proceeding. *Minnesota*, slip op. at 35. The ICC adopted this interpretation in conjunction with approval of exemptions under § 10505(a), stating a similar interpretation is warranted when revocation is sought under § 10505(d). *Id.* at 36. The ICC held the comparable language in the two subsections of the same statutory section compelled comparable construction of the subsections. *Id.*

The judicial standard of review for agency actions is defined by 5 U.S.C. § 706. *Humphrey v. United States*, 745 F.2d 1166, 1169–70 (8th Cir.1984). We review the deci-

sion of the ICC for abuse of discretion, and to see if it is arbitrary, capricious, or unsupported by substantial evidence on the record as a whole. *Id., citing* 5 U.S.C. § 706(2). This standard of review is very narrow. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). Based on this standard of review, we hold the ICC is not required to review each section of the RTP to decide whether to grant an exemption or revoke an exemption other than the one for the purpose of which the exemption was granted or revoked. This view is supported by the recent decision, *Oregon Pub. Util. Comm'n. v. ICC,* 979 F.2d 778, 781 (9th Cir.1992), *citing Accord Village of Palestine v. ICC,* 936 F.2d 1335, 1338–40 (D.C.Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 868, 116 L.Ed.2d 773 (1992); which held the ICC needs to take into account "only the purpose of that portion of the statute from which exemption is granted ... otherwise, the ICC would be faced with the impossible task of reconciling a variety of different objectives...."

■ UTU next argues the ICC's rejection of its request for greater employee protective conditions was based on inadequate findings. UTU asserts that the ICC's finding that Burlington employees affected by Commercial's acquisition of trackage rights were fully protected and fully compensated is incorrect. UTU claims this finding is arbitrary, capricious, and unsupported by substantial evidence. UTU claims the transaction between Commercial and Burlington was not a bona fide trackage rights claim; therefore, additional protective labor conditions should have been imposed.

Burlington, Commercial, and the ICC argue UTU has failed to show the imposed protective labor conditions were inadequate. Burlington, Commercial, and the ICC contend the transaction was a bona fide grant of trackage rights despite the fact that Burlington does not continue to provide service on the lines. They argue Commercial fully complied with its obligation to inform Burlington's employees of any availability and terms or conditions of employment. Burlington, Commercial, and the ICC assert the cost and service improvements Commercial made provided incentives for shippers to choose Commercial's service.

An examination of the record reveals substantial evidence, on the whole, to support the ICC's decision. The ICC found no control relationship between Burlington and Commercial; therefore, it found this transaction was not the sort of intra-corporate family condemned in *Burlington N. R.R. v. United Transp. Union,* 862 F.2d 1266, 1273–75 (7th Cir.1988) (parent cannot evade collective bargaining agreement duties by transferring trackage rights to its wholly-owned subsidiary). *Minnesota,* slip op. at 39–42. In addition, the ICC rejected UTU's contention that special protective labor conditions were needed. *Id.* at 43. The ICC found that Commercial voluntarily offered positions to Burlington employees which the employees declined to accept. *Id.* at 45. The ICC concluded that extraordinary circumstances warranting further protective labor conditions did not exist in the present case. *Id.* at 46. We agree. In reaching its decision, the ICC applied the correct statutory standard and considered the required factors and did not abuse its discretion or otherwise fail to act in accordance with the law.

Accordingly, we affirm the decision of the ICC to grant an exemption for the transfer of trackage rights from Burlington to Commercial and deny the petition for review.