**SUNSHINE HEALTH SYSTEMS, INC., dba Christian Hospital Medical Center, Plaintiff-Appellee,**

v.

**Otis BOWEN, Secretary of Health and Human Services,\* Defendant-Appellant.**

**Nos. 85–6368, 86–6338.\*\***

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1986.

Decided Feb. 6, 1987.

---

\* Otis Bowen is substituted for his predecessor, Margaret M. Heckler, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

\*\* Appellant's October 27, 1986 motion to consolidate appeal of the interest award (No. 86–6338) with appeal of the jurisdiction and statutory construction questions (No. 85–6368) and to waive filing of briefs is granted.

Thomas J. Weiss, Los Angeles, Cal., for plaintiff-appellee.

Edward R. Cohen, Washington, D.C., for defendant-appellant.

*** Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

Before TANG and BRUNETTI, Circuit Judges, and JAMESON,*** District Judge.

TANG, Circuit Judge:

The Secretary of Health and Human Services (Secretary) appeals from the district court's summary judgment holding that one of the Secretary's Medicare regulations is invalid. The district court held that 42 C.F.R. § 412.71(a)(2) (1985) is inconsistent with 42 U.S.C. § 1395ww(b)(5) (1982) and that the Secretary's designation of the Christian Hospital Medical Center, owned by Sunshine Health Systems, Inc. (Sunshine), as a "new hospital" for purposes of Medicare reimbursement was an abuse of discretion.

The Secretary contends that: (1) the district court lacked subject matter jurisdiction over Sunshine's action; (2) the disputed regulation is valid; and (3) the district court erred in awarding Sunshine interest on the judgment. We affirm the district court's judgment.

## BACKGROUND

Title XVIII of the Social Security Act established the Federally funded health insurance program known as "Medicare." 42 U.S.C. §§ 1395–1395zz (1982 & Supp. II 1984). Until October 1, 1983, the Federal Government reimbursed eligible hospitals on a cost basis for providing covered services to Medicare beneficiaries. Under the cost-based system, which continues to apply to a limited class of providers, providing hospitals receive interim payments based on estimates of the hospitals' costs. 42 C.F.R. § 405.454(f)(1) (1985). A final determination of the actual reimbursable costs is not made until the end of the cost reporting year. A "Notice of Program Re-

imbursement" (NPR) contains the final determination, which is used to make a retroactive adjustment of the interim payments. 42 C.F.R. §§ 405.405–06, 404.453(f), 404.-454, 404.1803(a) (1985).

Congress amended 42 U.S.C. § 1395x in 1972 to grant explicit authority to the Secretary to exclude costs found to be unnecessary to the efficient delivery of needed services. *See* the Social Security Act Amendments of 1972, Pub.L. No. 92–603, § 223, 86 Stat. 1329, 1393; 42 U.S.C. §§ 1395f(b), 1395x(v)(1)(A) (1982). Regulations promulgated under this so-called "section 223" authority placed limits on Medicare reimbursement for routine operating costs. *See generally* 42 C.F.R. § 405.460 (1985).

In the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324, Congress granted authority to the Secretary to establish new limits on reasonable cost reimbursement. *See* 42 U.S.C. § 1395ww(b) (Supp. II 1984). The TEFRA provisions expanded the coverage of the Section 223 limits and restricted the rate of increase of reimbursable inpatient operating costs according to certain "target amounts." *See generally* 42 C.F.R. § 405.463 (1985). By means of the "target amount," a hospital's per discharge operating costs are limited by the allowable operating costs for the preceding 12–month cost reporting period plus an inflation factor. 42 U.S.C. § 1395ww(b)(3). Hospitals whose costs are less than their target amounts are entitled to bonuses, while hospitals whose costs exceed their target amounts are reimbursed only 25 percent of the excess amount. 42 U.S.C. § 1395ww(b)(1) (Supp. II 1984).

In 1983, Congress amended the Social Security Act to provide for an entirely new method of computing payments to Medicare providers. *See id.* § 1395ww(d). Under this new Prospective Payment System (PPS), payment for the operating costs of inpatient hospital services is made on the basis of prospectively determined rates and applied on a per-discharge basis.[1] *Id.;* 42 C.F.R. § 412.1(a) (1985).[2]

Congress established a transition period "to minimize disruptions that might otherwise occur because of a sudden change in reimbursement policy" from the cost-based system to the fixed payment system. H.R. Rep. No. 25, 98th Cong., 1st Sess. 132, *reprinted in* 1983 U.S.Code Cong. & Admin.News 143, 355. During this transition period, a hospital's payment for inpatient services is based on a blend of the Federal prospective payment rate[3] and a "hospital specific portion" (HSP). The HSP is based on a hospital's actual costs during a designated base year. 42 U.S.C. § 1395ww(d)(1)(A) (Supp. II 1984); 42 C.F.R. §§ 412.70–74 (1985). For the first year of the transition period (cost reporting periods beginning between October 1983 and October 1984), the HSP comprises 75 percent of the hospital's payment amount and the Federal portion comprises 25 percent. 42 U.S.C. § 1395ww(d)(1)(C)(i) (Supp.

1. Not all costs related to inpatient hospital services are covered by the PPS. 42 U.S.C. § 1395ww(a)(4) (Supp. II 1984); 42 C.F.R. § 412.1(a) (1985). Moreover, certain types of hospitals, e.g. psychiatric, children's, and long-term care hospitals, are still reimbursed on a reasonable-cost basis. 42 U.S.C. § 1395ww(d)(1)(B) (Supp. II 1984).

2. The prospectively determined rates are based on "diagnosis related groups" (DRGs). A DRG is a treatment category, a grouping of similar kinds of cases whose cost of treatment is expected to be similar. The Secretary assigns to each DRG "an appropriate weighting factor that reflects the estimated relative cost of hospital resources used with respect to discharges classi-

fied within that group compared to discharges classified within other groups." 42 C.F.R. § 412.60(b) (1985). The DRG weight is multiplied by a fixed national average cost of treating a Medicare patient to determine the hospital payment for treating a patient whose illness falls within that DRG. 42 U.S.C. § 1395ww(d)(3) (Supp. II 1984).

3. The Federal prospective payment portion of the transition payment is based on the DRG weight multiplied by a shifting combination of regional and national averages; once the transition period ends, only national averages will be used. 42 U.S.C. § 1395ww(d)(1)(D) (Supp. II 1984); 20 C.F.R. § 412.70(c)(4) (1985).

II 1984). Over the next four years,[4] the HSP portion is gradually decreased while the Federal portion is correspondingly increased. *Id.* § 1395ww(d)(1)(C)(ii)–(iii). After October 1987, the transition period ends and the Federal portion (*i.e.*, a fixed national rate) comprises 100 percent of a hospital's payment amount. *Id.* § 1395ww(d)(1)-(A)(iii) *amended by* 100 Stat. 82, 155 (1986).

The Secretary's regulations provide that a hospital's "base year costs" are to be measured by periods of no less than 12 months. 42 C.F.R. § 412.71(a)(2) (1985). If a hospital is "newly participating in the Medicare program" and does not have a 12–month cost reporting period ending before September 30, 1983, the hospital is classified as a "new hospital." 42 C.F.R. § 412.74(a)(1) (1985). "New hospitals" are not accorded the benefit of any hospital-specific portion (HSP) during the transition period. Payments to such providers are based solely on the fixed Federal prospective payment rates. *Id.* § 412.74(b).

The Medicare statutes establish an administrative appeal procedure, with disputes regarding provider payments to be heard by a Provider Reimbursement Review Board (PRRB). *See* 42 U.S.C. § 1395*oo* (1982 & Supp. II 1984).

### FACTS

Sunshine Health Systems, Inc. (Sunshine) operates the Christian Hospital Medical Center, a 36–bed acute care hospital in Perris, California. In January 1981 the hospital, then owned by Golden Triangle Medical Center, Inc., was decertified and closed due to high mortality rates. In December 1981 Golden Triangle sold the hospital to Advanced Health Systems, Inc., which remodeled the facility and had it recertified on March 10, 1982. Advanced Health Systems sold the hospital in June 1983 to Horizon Health Corporation which then sold it to Sunshine in January 1984.

Because of the turnover, the last full 12–month cost reporting period for the hospital was January-December 1980. Following recertification in 1982, the hospital filed cost reports for the following periods: March-September 1982 (7 months), October 1982–May 1983 (8 months), and June 1983–January 1984 (8 months).

In May 1984, Sunshine sought an exemption from the Section 223 reasonable-cost limitations for the hospital's cost reporting periods since March 1982. 42 C.F.R. § 405.460(e)(2) (1985) permits exemptions from the reasonable cost limits for "new providers." A new provider is one that has operated in the Medicare program, under present and previous ownership, for less than three full years. *Id.* In July 1984, the Secretary granted the "new provider" exemption based on increased start-up costs resulting from the closure of the hospital for more than 14 months and the adverse publicity surrounding the decertification. At the same time, the Secretary informed Sunshine that beginning January 1984 its hospital would be reimbursed as a "new hospital" during the PPS transition period and that "its PPS rate [would be] based solely on a blend of the regional and national Federal rates with no hospital-specific portion included."

Sunshine attempted to appeal this "new hospital" designation. Sunshine requested a hearing before the Provider Reimbursement Review Board (PRRB) for a determination that, pursuant to 42 U.S.C. § 1395*oo* (f)(1) (Supp. II 1984),[5] the PRRB lacked authority to decide Sunshine's challenge to the validity of 42 C.F.R. § 412.71(a) (requiring 12–month or longer reporting periods).[6] The PRRB refused to accept Sunshine's request for a hearing and for expedited

---

**4.** Originally designed to last three years, the transition period was recently extended to four years. 42 U.S.C. § 1395ww(d)(1) (Supp. II 1984), *amended by* Pub.L. No. 99–272, § 9102, 100 Stat. 82, 155 (1986).

**5.** Section 1395*oo*(f)(1) states that a provider otherwise entitled to a hearing "may file a request

for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy."

**6.** The PRRB must comply with all of the Secretary's regulations and HCFA Rulings. 42 C.F.R. § 405.1867 (1985).

judicial review because no Notice of Program Reimbursement (NPR) had been issued for the first PPS year. The PRRB based this decision on HCFA Administrative Ruling, HCFAR 84–1.[7]

In February 1985, Sunshine filed a complaint in the district court seeking injunctive and declaratory relief, alleging that the Secretary's designation of Sunshine as a "new hospital" for purposes of the PPS transition period violated 42 U.S.C. § 1395ww(b)(5) (1982).[8] Sunshine also filed a motion for a preliminary injunction, presenting evidence that the "new hospital" designation would cost the hospital approximately $2 million over the three-year transition period, and asserting that the hospital would be unable to continue operations unless immediate relief was granted.

The district court granted a preliminary injunction reversing the PRRB's decision to deny Sunshine a hearing and ordering the PRRB to determine whether it had authority to decide Sunshine's appeal of its "new hospital" status. The PRRB ruled that it was without authority to decide whether the disputed regulation was invalid and granted Sunshine's request for expedited judicial review.

Sunshine and the Secretary filed cross motions for summary judgment. On July 22, 1985, the district court granted summary judgment for Sunshine, holding that "[t]o the extent that 42 C.F.R. § 412.-71(a)(2) fails to provide for the use of any other than a 12 month cost reporting period as a base year, it is inconsistent with 42 U.S.C. § 1395ww(b)(5)" and that the Secretary's designation of Sunshine's Christian Hospital Medical Center as a "new hospital" was arbitrary, capricious, and an abuse of discretion. The court found that the "new hospital" designation, and the resulting absence of any HSP, substantially affected Sunshine's reimbursement amounts for fiscal years 1984–86. The court ordered the Secretary to: (1) grant Sunshine a 12–month base year period for purposes of calculating the hospital-specific portion (HSP) of its transition-year PPS reimbursement formula; (2) include the appropriate HSP in the PPS calculations for 1985–86; and (3) recalculate the 1984 reimbursement and pay Sunshine the difference after factoring the appropriate HSP into the calculation.

## ANALYSIS

### I

#### Standard of Review

We review the district court's grant of summary judgment de novo. *Vance v. Hegstrom*, 793 F.2d 1018, 1022 (9th Cir. 1986); *Regents of the University of California v. Heckler*, 771 F.2d 1182, 1187 (9th Cir.1985).

"Judicial review of Medicare reimbursement decisions is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1982), which requires a court to set aside agency actions found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law ...' *Id.* at § 706." *Regents*, 771 F.2d at 1187. Although an agency's interpretation of the statutory scheme under which it operates is entitled to considerable deference, we must reject an agency's interpretation that is inconsistent with the statute's meaning. *Vance*, 793 F.2d at 1023; *Regents*, 771 F.2d at 1187.

### II

#### Jurisdiction

The Secretary contends that the district court lacked jurisdiction over this action because Sunshine's appeal to the PRRB was premature. This contention is

---

7. The Health Care Financing Administration (HCFA) is the agency designated by the Secretary to administer the Medicare program. *See* 42 C.F.R. § 401.101(a) (1985).

8. Section 1395ww(b)(5) provides that "[i]n the case of any hospital having any cost reporting period of other than a 12–month period, the Secretary shall determine the 12–month period which shall be used for purposes of this section."

based on the Secretary's ruling HCFAR 84–1. Sunshine contests the validity of this ruling. Sunshine's contention has merit.

Both parties agree that at some point Sunshine may contest its "new hospital" designation. Both parties agree that Sunshine must first appeal to the PRRB, whose decision is then subject to judicial review. At issue is whether Sunshine appealed to the PRRB too soon. The Secretary contends that Sunshine could not appeal to the PRRB until an NPR was issued. If so, then the district court should have dismissed Sunshine's action for lack of jurisdiction.

The 1983 Medicare amendments altered the manner in which hospitals could appeal payment amount disputes to the PRRB. 42 U.S.C. § 1395oo(a) (Supp. II 1984) provides that "any hospital which receives payments in amounts computed under subsection (b) or (d) of section 1395ww" may obtain a hearing by the PRRB if it "is dissatisfied with a final determination of the Secretary as to the amount of the payment" and it requests a hearing "180 days after notice of the Secretary's final determination." In May 1984, the Secretary issued HCFAR 84–1, which held that issues related to payment amounts under the PPS could not be appealed to the PRRB until the hospital seeking appeal had received its NPR for the PPS cost reporting period involved. 49 Fed.Reg. 22,413, 22,415 (1984). The PRRB refused to hear Sunshine's appeal because no NPR had yet been issued for Sunshine's first PPS cost year. The Secretary contends that HCFAR 84–1 is an acceptable implementation of § 1395oo(a).

The district court disagreed with the Secretary's contention, concluding that:

> The statutory scheme formulated by Congress nowhere indicates that Congress intended that a Medicare provider must wait for review until an NPR for

its first PPS year is issued before the PRRB will determine if it has authority to hear an appeal, particularly where the consequences of a delay in review may be immediate and drastic.

The Secretary's contention has also been rejected by a number of district courts [9] and, most recently, by the Court of Appeals for the D.C. Circuit in *Washington Hospital Center v. Bowen*, 795 F.2d 139 (D.C.Cir. 1986).

The D.C. Circuit's decision in *Washington Hospital Center* was based on an extensive, careful analysis of the changes made to § 1395oo(a) by the 1983 amendments. As amended, the statute provides as follows (the portions added in 1983 by Pub.L. 98–21 § 602(h)(1) are underlined):

> Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... *and ... any hospital which receives payments in amounts computed under subsection (b) or (d) of section 1395ww of this title and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board,* if—
>
> (1) such provider—
>
> (A)(*i*) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider ..., *or*
>
> (*ii*) *is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1395ww of this title,* ...
>
> (2) the amount in controversy is $10,-000 or more, and

---

9. *See, e.g., St. Francis Hospital v. Heckler,* Medicare & Medicaid Guide (CCH) ¶ 34,918 at 9516 (S.D.W.Va. Sept. 30, 1985); *Medical Center Hospital v. Heckler,* Medicare & Medicaid Guide (CCH) ¶ 34,920 at 9523–24 (M.D.Fla. Sept. 23, 1985); *Greenville Hospital System v. Heckler,* 642 F.Supp. 15, Medicare & Medicaid Guide (CCH) ¶ 34,832 at 9174 (D.S.C.1985); *Doctors General Hospital, Inc. v. Heckler,* 613 F.Supp. 1036, 1041 (S.D.Fla.1985); *Redbud Hospital District v. Heckler,* Medicare & Medicaid Guide (CCH) ¶ 34,085 at 9884 (N.D.Cal. July 30, 1984).

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(*i*), *or with respect to appeals under paragraph (a)(A)(ii), 180 days after notice of the Secretary's final determination* ...

The D.C. Circuit concluded that § 1395*oo* (a) establishes two different appeal routes: one following the issuance of an NPR (and relating to cost-based reimbursement) and the other following notice of what amount will be paid under the PPS. *Washington Hospital Center*, 795 F.2d at 145. The court reasoned that the language added to the introductory paragraph of § 1395*oo*(a) and the new subsection (1)(A)(ii) would be reduced to mere surplusage if the amendments had not been intended to create a new and different route for PPS appeals. *Id.* at 145–46. Regarding subsection (1)(A)(ii), the court stated: "The existing subsection on cost reimbursement appeals refers specifically to the NPR, which contains the ... determination 'as to the amount of total program reimbursement.' By adding subsection (1)(A)(ii), which contains no such reference to NPRs, Congress expressed its clear intention to change the prerequisites for PPS appeals." *Id.* at 146.

The court pointed out that under the PPS, the only variable factor in the final determination of a per-patient payment rate during the transition period is the hospital-specific portion (HSP). *Id.* at 147. The court reasoned that the differences in phrasing between subsection (1)(A)(i)'s appeal from "the amount of total program reimbursement" and subsection (1)(A)(ii)'s appeal from "the amount of the [PPS] payment" give "a clear signal that the statute refers to per-patient amounts rather than the overall figures contained in the NPR." *Id.* The court concluded (*id.* at 147–48 & n. 11):

The amount of payment to hospitals during the PPS transition period is a weighted sum of a hospital-specific amount and a DRG amount, with the weights and the DRG amount fixed by statute or the Sec-

retary. Thus, once there is a final determination as to the hospital-specific amount there is a final determination as to the amount of payment as required by § 1395*oo*(a)(1)(A)(ii).

.    .    .    .    .

[N]othing in the statute or legislative history supports the Secretary's position that he is authorized to impose an additional requirement of finality in the form of an NPR once the hospital's target amount has been set with finality pursuant to § 1395ww(d) and the implementing regulations.

In the case at bar, the July 1984 letter stating that Sunshine was not entitled to any hospital-specific portion constituted "notice of the Secretary's final determination" [10] as to the amount of PPS transition payments because it guaranteed that such payments would be calculated solely on the basis of the fixed standardized cost averages.

The Secretary makes the same arguments here that were apparently made in *Washington Hospital Center*. The Secretary argues that § 1395*oo*(a), as amended, retains the existing procedures which only allow appeal from the total amount actually paid the hospital, an amount that is unknown until the hospital's cost reports have been submitted and an NPR has been issued. The D.C. Circuit's analysis in *Washington Hospital Center* is more persuasive.

The Secretary cites *Charter Medical Corp. v. Bowen*, 788 F.2d 728 (11th Cir. 1986), as a case holding that the issuance of an NPR is a prerequisite to filing an appeal. But the court there held only that an NPR was required for an appeal pursuant to 42 U.S.C. § 1395*oo*(a)(1)(A)(i); the court did not reach the issue of whether an NPR is required for a § 1395*oo*(a)(1)(A)(ii) appeal because the plaintiffs only appealed under subsection (A)(i). *Charter Medical Corp.*, 788 F.2d at 733. The court did say, however, that "§ 1395oo(a)(1)(A)(i) and (ii) appear to set up two different avenues of

**10.** Pursuant to 42 U.S.C. § 1395*oo*(a)(3).

appeal for hospitals receiving medicare payments." *Id.* at 732 (dicta). The decision in *Charter Medical Group* is, therefore, entirely consonant with the decision in *Washington Hospital Center.*

The Secretary also argues that the 1983 amendment of § 1395*oo*(a) could not have made any substantive changes in the review process because it was intended to be merely a conforming amendment. Responding to the same argument, the *Washington Hospital Center* court stated: "Under PPS, hospitals receive prospectively established payments rather than retrospectively established reimbursements. Under our reading of the statutory language, § 1395*oo*(a) simply conforms the PRRB review process to this change in the method of calculating Medicare payments." *Washington Hospital Center,* 795 F.2d at 149. The Secretary cites Congressional language to the effect that "[i]n general, the same conditions, which now apply for review by the PRRB and the courts, would continue to apply." H.R.Rep. No. 25 at 143, *reprinted in* 1983 U.S.Code Cong. & Admin.News at 362. The D.C. Circuit pointed out that "in general" implies that "in particular" there would be some changes. *Washington Hospital Center,* 795 F.2d at 149.

We adopt the reasoning of the D.C. Circuit and sustain the district court's ruling that Sunshine did not need to await the issuance of an NPR before appealing to the PRRB. Therefore, the district court had jurisdiction over Sunshine's claim that it should not have been designated a "new hospital."

### III

### Validity of 42 C.F.R. 412.71(a)(2)

■ 42 C.F.R. § 412.71(a)(2) (1985), in conjunction with 42 C.F.R. § 412.74(a)(1) (1985), provides that in order to avoid being designated a "new hospital," a hospital must have had a 12–month or longer cost reporting period ending before September 30, 1983. The district court declared § 412.71(a)(2) invalid on the ground that it conflicted with 42 U.S.C. § 1395ww(b)(5)

(1982), which directs the Secretary to select a 12–month cost reporting period for those hospitals that did not have one.

The Secretary argues that: (1) the regulation was validly enacted pursuant to statutory directive; (2) § 1395ww(b)(5) does not apply to the computation of provider payments under the PPS; (3) the district court erred by not deferring to the Secretary's statutory interpretation; and (4) allowing Sunshine a base year of less than 12 continuous months permitted Sunshine to reap an undeserved windfall in its Medicare reimbursement. None of the Secretary's arguments are persuasive.

### A. *Consistency with Statutory Authority*

When Congress enacted the PPS legislation, it foresaw that the transition period would not eliminate the disruptions caused by the shift from cost-based to fixed-payment reimbursement for all providers. The House Committee on Ways and Means stated:

> Your Committee understands that there will be a relatively small number of hospitals for which there is no historical cost experience on which to base a target rate; for example, new hospitals. In this case, your Committee expects the Secretary to make appropriate provision for applying a prospective payment rate. This might be accomplished by using the total cost limit appropriate to the hospital as the hospital-specific portion of the payment due the hospital during a transition year.

H.R.Rep. No. 25 at 137, *reprinted in* 1983 U.S.Code Cong. & Admin.News at 356.

The Secretary's regulations provide that during the transition period a "new hospital" is one that is newly participating in the Medicare program and does not have a 12–month cost reporting period ending before September 30, 1983. 42 C.F.R. § 412.74(a)(1) (1985). Calculation of the 12–month period is determined by 42 C.F.R. § 412.71(a)(2) (1985), which provides:

If the hospital's last cost reporting period ending before September 30, 1983 is for less than 12 months, *the base period will be the hospital's most recent 12-month or longer cost reporting period* ending before such short reporting period, with an appropriate adjustment for inflation. (The rules applicable to new hospitals are set forth in § 412.74). (emphasis added)

It was this regulation that directed a finding that Sunshine was a "new hospital" under § 412.74, because Sunshine did not have a 12-month or longer cost reporting period since the hospital reopened in March 1982. Once designated a "new hospital," the regulations provide that no part of the PPS transition payments will be based on Sunshine's actual costs:

For purposes of computing transition payment rates for a new hospital, HCFA will not use the hospital-specific portion of the prospective payment rate. Payments to new providers will be based solely on the Federal regional and national prospective payment rates, as described in § 412.70(d).

20 C.F.R. § 412.74(b) (1985).

Hence, it appears that the Secretary did not properly carry out the Congressional mandate in that the Secretary: (1) rejected the suggestion to use an average cost rate to give an HSP to new hospitals, and (2) did not confine the "new hospital" designation to hospitals having no historical cost experience.

### B. *Application of § 1395ww(b)(5) to PPS*

The district court found that § 412.-71(a)(2) (1985) conflicted with 42 U.S.C. § 1395ww(b)(5) (1982), which states: "In the case of any hospital having any cost reporting period of other than a 12-month period, the Secretary shall determine the 12-month period which shall be used for purposes of this section." The district court held that § 1395ww(b)(5) "governs the computation of payment under the PPS" and that the Secretary failed to comply with this statute when he used § 412.-71(a)(2) to deny Sunshine any hospital-specific portion for the PPS transition period.

The Secretary argues that § 1395ww(b)(5) does not apply to payments under the PPS. This argument is patently incorrect. First, § 1395ww(b)(5) refers to "the 12-month period which shall be used *for purposes of this section*" (emphasis added). "This section" clearly refers to § 1395ww, of which both (b) and (d) are subsections.

Second, although the PPS is basically embodied within 42 U.S.C. § 1395ww(d) (Supp. II 1984), there is a clear interface between § 1395ww subsections (b) and (d). Subsections 1395ww(d)(1)(A)(i) and (ii) set out the method for computing PPS payments during the transition period. One of the computational factors is "the hospital's target amount for the cost reporting period (as defined in subsection (b)(3)(A) of this section)." 42 U.S.C. § 1395ww(d)(1)(A)(i)(I) and (ii)(I) (Supp. II 1984). Section 1395ww(b)(3)(A) (1982) defines the "target amount" as, in part, "the allowable operating costs of inpatient hospital services ... recognized under this subchapter for such hospital for the preceding 12-month cost reporting period." The Secretary concedes that § 1395ww(b)(3)(A) is used in calculating PPS payments. The Secretary gives no reasonable argument for concluding that while subsection (b)(3) applies to the PPS, subsection (b)(5) does not.

The Secretary argues that § 1395ww(b)(5) applies only to the 1982 TEFRA amendments and is inapplicable to the PPS because Congress intended the subsequently enacted § 1395ww(d) to govern payments under PPS. This argument is unpersuasive because subsection (d) by its own terms incorporates one of the main concepts of subsection (b), as we have just noted.

### C. *Deference to Agency's Interpretation*

The Secretary argues that the district court should have deferred to the Secretary's interpretation of the legislative scheme. This argument has no merit because the Secretary's interpretation is

plainly at odds with the statutory scheme. *See Vance v. Hegstrom*, 793 F.2d 1018, 1023 (9th Cir.1986); *Regents of the University of California v. Heckler*, 771 F.2d 1182, 1187 (9th Cir.1985).

### D. *Prevention of Windfall*

The Secretary argues that permitting Sunshine a hospital-specific portion for the transitional PPS payments would result in an unfair windfall. The crux of this argument is that Sunshine sought, and was granted, an exemption from the section 223 reasonable cost limits, pursuant to 42 C.F.R. § 405.460(e)(2) (1985), as a "new provider." The "new provider" exemption was granted because Sunshine had unusually high start-up costs due to the hospital's decertification, closure and bad publicity. Since its costs during the 1982–84 period were unusually high, granting Sunshine a hospital-specific portion based on that period would result in Sunshine's receiving inflated payments during the transition period.

Sunshine argues that its "new provider" status under § 405.460(e)(2) applied only to the former cost-based reimbursement system, and has no relevance to whether it should be designated a "new hospital" under the PPS. Sunshine correctly points out that the definitions of a "new provider" under § 405.460(e)(2) and a "new hospital" under § 412.74 are different, and that a "new provider" is not necessarily also a "new hospital." The district court concluded that under the statutory scheme the "new provider" exemption was not related to the 12–month base period required for PPS reimbursement. We agree.[11]

The Secretary's regulation 42 C.F.R. § 412.71(a)(2) (1985) conflicts with the plain meaning of 42 U.S.C. § 1395ww(b)(5) (1982), and the regulation is therefore invalid.

### IV

### Interest Award

In May 1986, after the Secretary filed notice of appeal in this matter, Sunshine filed a Fed.R.Civ.P. 60(b) motion in the district court to require the Secretary to pay interest on the judgment pursuant to 42 U.S.C. § 1395oo(f)(2). Following our grant of a limited remand, the district court granted Sunshine's motion. The Secretary contends that the district court erred in awarding interest. This contention is without merit.

Section 1395oo(f)(2) provides that "the amount in controversy shall be subject to annual interest beginning ... after the 180–day period as determined pursuant to subsection (a)(3)." 42 U.S.C. § 1395oo(a)(3) defines this period as "180 days after notice of the Secretary's final determination." The Secretary argues that there is no "final determination" until a Notice of Program Reimbursement (NPR) is issued. This argument is identical to the Secretary's argument that the district court lacked subject matter jurisdiction in this case. We have already rejected that argument.

The Secretary also argues that interest should not be awarded because nothing of value was withheld or delayed. The district court's judgment, however, ordered the Secretary to pay "the sum equal to the difference between what plaintiff already received as PPS reimbursement for 1984 and what plaintiff is entitled to given the

---

11. It appears that Congress may have foreseen this windfall problem. There is language in the legislative history that suggests that the HSP was to be based on a hospital's historical costs with the section 223 limits applied, but without any of the section 223 exemptions (such as the "new provider" exemption) applied. *See* H.R. Rep. No. 25 at 136–37, *reprinted in* 1983 U.S. Code Cong. & Admin.News at 355–56. Hence, Congress seems to have intended that a "new provider" such as Sunshine would get an HSP component in its PPS transition payments, but that this HSP component would not include such unusual operating costs as would warrant a section 223 exemption. The Secretary, however, promulgated regulations whereby a provider in Sunshine's position, with no 12–month or longer cost reporting period before September 1983, was denied any base-year and thus denied any HSP in the calculation of its PPS transition payments.

proper hospital-specific element in its reimbursement formula." Clearly the district court found that the Secretary had withheld payment amounts properly due Sunshine.

## CONCLUSION

We find no grounds for reversal in any of appellant's contentions. The judgment is AFFIRMED.