**SPRINGDALE MEMORIAL HOSPITAL ASSOCIATION, INC., Appellee,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health & Human Services, Appellant.**

**No. 86–1745.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1987.

Decided May 11, 1987.

John P. Schnitker, Washington, D.C., for appellant.

Carel T. Hedlund, Baltimore, Md., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The issue before us is when can a hospital obtain administrative review of the payment amount it receives under the new Medicare prospective payment system. In HCFA Ruling 84-1, 49 Fed.Reg. 22,413 (1984), the Secretary concluded that, like under the old cost reimbursement system, a hospital can obtain review only after it files a year-end cost report and receives a Notice of Program Reimbursement ("NPR"), the document that states the amount due the hospital under Medicare. When Congress adopted the prospective payment system in 1983, it added a conforming amendment to 42 U.S.C. § 1395*oo* (a) (Supp. III 1985), the Medicare section authorizing hospitals to seek administrative review. The district court held that this conforming amendment authorizes administrative review prior to the issuance of an NPR; therefore, HCFA Ruling 84-1 frustrates congressional policy and is invalid. We conclude that neither section 1395*oo* (a) nor the relevant legislative history unambiguously demonstrates that Congress intended to change the timing and number of appeals brought by hospitals receiving Medicare payments. We thus reverse the district court's judgment.

## I.

Until October 1983, hospitals participating in the Medicare program received reimbursements based on the actual, reasonable costs they incurred. 42 U.S.C. § 1395f(b) (1982). Because this cost reimbursement system, which still applies in limited situations,[1] is based on a hospital's actual costs, the total reimbursement due for a cost year—with adjustments made for estimated interim payments, *see* 42 C.F.R. §§ 413.-60, 413.64 (1986)—cannot be finally determined until the hospital submits its yearly cost report and the fiscal intermediary issues an NPR, which establishes the amount of reasonable costs. *Id.* §§ 405.-1803, 413.60(b)-(c), 413.64(a), (f). Administrative review under the cost reimbursement system is available only after the hospital files a cost report and there is "a final determination * * * as to the amount of total program reimbursement due the provider * * *." 42 U.S.C. § 1395*oo* (a)(1)(A)(i). The parties agree that this statutory language requires the issuance of an NPR before a hospital can appeal the amount of reimbursement under the cost reimbursement system. *See* 42 C.F.R. § 405.1801(a)(1) (1986).

In 1983 Congress adopted the Medicare prospective payment system under Title VI of the Social Security Amendments of 1983, Pub.L. No. 98-21, §§ 601-07, 97 Stat. 65, 149-72 (1983), and significantly altered how most hospitals are compensated for most services they provide Medicare patients. Under the prospective payment system,

1. For example, the cost reimbursement system still applies to certain types of hospitals, such as psychiatric hospitals, rehabilitation hospitals, alcohol/drug hospitals, and children's hospitals. 42 C.F.R. §§ 412.20-.30 (1986).

hospitals are not reimbursed based on their actual costs, but instead are paid predetermined amounts for specific services. Congress adopted the prospective payment system primarily "to reform the financial incentives hospitals face, promoting efficiency in the provision of services by rewarding cost/effective [sic] hospital practices." H.R.Rep. No. 25, 98th Cong., 1st Sess. 132, *reprinted in* 1983 U.S.Code Cong. & Admin.News 219, 351; *see also* S.Rep. No. 23, 98th Cong., 1st Sess. 47, *reprinted in* 1983 U.S.Code Cong. & Admin.News 143, 187.

Under the prospective payment system, the payment a hospital receives for treating a patient is the product of two variables: the *weighting factor* assigned to the "diagnosis-related group" ("DRG") in which the treatment falls and the *average cost* of treating a Medicare patient. 42 U.S.C. § 1395ww(d)(1) (Supp. III 1985). The Secretary has established over 460 DRGs—each consisting of comparable treatments having similar costs, *see* 42 C.F.R. § 412.60(a), (c) (1986)—and assigned to each group a weighting factor, a number that reflects the estimated cost relationship between each group. *Id.* § 412.60(b). As for the average cost variable, Congress provided for what is now a four-year transition period, 42 U.S.C. § 1395ww(d)(1), *amended by* Pub.L. No. 99-272, § 9102, 100 Stat. 82, 155 (1986), in order to "minimize disruptions that might otherwise occur because of a sudden change in reimbursement policy." H.R.Rep. No. 25 at 136, *reprinted in* 1983 U.S.Code Cong. & Admin.News at 355. During this period the average cost is determined by adding specified percentages of the "DRG prospective payment rate"—a standardized average inpatient cost rate, with variances based primarily on geographic classifications, *see* 42 U.S.C. § 1395ww(d)(1)-(3); 42 C.F.R. §§ 412.62-.63—and the "hospital's target amount." 42 U.S.C. § 1395ww(d)(1)(A). A "hospital's target amount"—termed the "hospital-specific rate" in the Secretary's regulations, 42 C.F.R. §§ 412.70(a), 412.73 (1986)—is based primarily on the hospital's own average cost of treating a Medicare patient during the hospital's base year, its cost year ending between September 30, 1982 and September 30, 1983. *Id.* §§ 412.71, 412.73. A "hospital's target amount" constitutes seventy-five percent of the average cost equation in the first year of the transition period and is eventually phased out in 1988, after which prospective payment system payments will be unrelated to the provider hospital's actual costs. Of the three factors used to compute the average cost variable—the "hospital's target amount," the "DRG prospective payment rate," and the specified percentage of each—only the determination of the "hospital's target amount" is subject to administrative or judicial review. 42 U.S.C. § 1395ww(d)(7) (Supp. III 1985).

When Congress passed the prospective payment system, it also adopted what it titled "conforming amendments" to 42 U.S.C. § 1395*oo* (a), the section that authorizes administrative review of disputes over Medicare payments to hospitals. *See* Pub.L. No. 98-21, § 602, 97 Stat. 65, 163-66 (1983). Section 1395*oo* (a), with the conforming amendments in italics, states:

> Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board * * * *and* * * * *any hospital which receives payments in amounts computed under subsection (b) or (d) of section 1395ww of this title and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board,* if—
>
> (1) such provider—
>
> (A)*(i)* is dissatisfied with a final determination * * * as to the amount of total program reimbursement due the provider for the items and services furnished to individuals * * * or
>
> *(ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under*

*subsection (b) or (d) of section 1395ww of this title,*

* * * * * *

(2) the amount in controversy is $10,-000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)*(i), or with respect to appeals under paragraph (1)(A)(ii), 180 days after notice of the Secretary's final determination* * * *.

42 U.S.C. § 1395*oo* (a) (1982 & Supp. III 1985).

In May 1984 the Secretary issued HCFA Ruling 84-1, concluding that an appeal pursuant to section 1395*oo* (a)(1)(A)(ii) is authorized "only after an NPR has been issued for the hospital's first cost reporting period under the prospective payment system." 49 Fed.Reg. 22,413, 22,415 (1984). The Secretary's position is that subsection (1)(A)(ii)'s requirement of "a final determination * * * as to the amount of the payment under subsection (b) or (d) of section 1395ww" cannot be satisfied until the hospital receives its NPR following the close of its cost reporting period. *Id.; see also* 42 C.F.R. 412.72(b)(1) (1986).

On June 30, 1984, Springdale Memorial Hospital Association, Inc., received its final "Notice of Base Period Costs and Target Amount," setting its hospital target amount at $2,346.38. After several months of unsuccessful negotiations between Springdale and its fiscal intermediary, Blue Cross, concerning certain aspects of Springdale's hospital target amount, Springdale appealed to the Provider Reimbursement Review Board. The Board, relying on HCFA Ruling 84-1, refused to accept jurisdiction over the appeal since Springdale had yet to receive an NPR for its first prospective payment system cost year.

Springdale appealed from the Board's decision to the district court. The district court ordered the Review Board to accept jurisdiction over Springdale's appeal, holding that "[t]he Secretary's ruling in HCFAR 84-1, requiring hospitals to obtain an NPR before appealing, is in derogation of the statutory scheme in 42 U.S.C. § 1395 *oo* (a) and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Springdale Memorial Hosp. Ass'n v. Bowen,* No. 86-1745WA, slip op. at 7 (W.D.Ark. Apr. 14, 1986).[2]

## II.

We review HCFA Ruling 84-1 under the standards of the Administrative Procedure Act, determining whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982). Ordinarily, "[t]he construction of a statute by an agency charged with its administration is entitled to substantial deference." *Missouri Pub. Serv. Comm'n v. ICC,* 763 F.2d 1014, 1017 (8th Cir.1985) (quoting *South Dakota v. CAB,* 740 F.2d 619, 621 (8th Cir.1984)). We will accord such deference, however, only if the agency's interpretation has a reasonable basis in law and does not frustrate congressional policy. *E.g., Metropolitan Medical Center v. Harris,* 693 F.2d 775, 780 (8th Cir.1982). Therefore, we must examine 42 U.S.C. § 1395*oo* (a) and ask whether HCFA Ruling 84-1 frustrates "the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). "[I]f the statute is silent or ambiguous with respect to the specific issue," then the Ruling is valid if it "is based on a permissible construction of the statute." *Id.*

## III.

Our analysis "must begin with the language employed by Congress and the as-

2. The district court was not alone in its conclusion. The panels in *Washington Hospital Center v. Bowen,* 795 F.2d 139 (D.C.Cir.1986), *Doctors Hospital, Inc. v. Bowen,* 811 F.2d 1448 (11th Cir.1987), *Sunshine Health Systems, Inc. v. Bowen,* 809 F.2d 1390 (9th Cir.1987), and *St. Francis Hospital v. Bowen,* 802 F.2d 697 (4th Cir.1986), also struck down the Secretary's Ruling. Additionally, Springdale cites twelve district court opinions invalidating the Ruling. Springdale draws most of its arguments from *Washington Hospital,* the leading opinion in this group.

sumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). Subsection (1)(A)(ii) applies to a "final determination * * * as to the amount of the *payment under subsection (b) or (d)* of section 1395ww." 42 U.S.C. § 1395*oo* (a)(1)(A)(ii) (emphasis added). This language undoubtedly covers the "payment" a hospital receives under section 1395ww(d)(1)(A)—a payment whose amount is finally ascertained prior to the issuance of the year's NPR.[3] But this language also encompasses numerous types of "payment" under section 1395ww(b) or (d) whose amount *cannot* be finally determined until after the year's NPR is issued. For instance, the amount of the "payment" under section 1395ww(b) cannot be finally determined until after the issuance of an NPR. *Id.* § 1395ww(b)(1) (Supp. III 1985).[4] Similarly, only after an NPR is issued can one finally determine the amount of the "payment" under section 1395ww(d) for hospital cases of unusual length or severity (termed outlier cases), *id.* § 1395ww(d)(5)(A); 42 C.F.R. §§ 412.80–.84 (1986), for the indirect costs of medical education, 42 U.S.C. § 1395ww(d)(5)(B); 42 C.F.R. § 412.118, and for the cost of nonphysician anesthesia services, 42 U.S.C. § 1395ww(d)(5)(E). The plain language of section 1395*oo* (a) shows that when Congress authorized an appeal with respect to a final determination of the payment amount under section 1395ww(b) or (d), it authorized review of an amount that could not be finally determined until after an NPR was issued. This fact alone undermines the argument that Congress unambiguously expressed its intent to authorize review under subsection (1)(A)(ii) prior to the issuance of an NPR.

Moreover, section 1395*oo* (a)(3) requires that to obtain review the hospital must request a hearing within "180 days after notice of the Secretary's final determination." Springdale argues that the "final determination" triggering the right to administrative review under subsection (1)(A)(ii) occurs when a hospital's target amount is finally determined prior to the cost year. If we accepted this contention, however, the 180-day time bar would effectively abrogate a hospital's congressionally mandated right to obtain review as to the amount of every payment under section 1395ww(b) or (d) that cannot be determined until an NPR is issued. *Id.* § 1395*oo* (a)(1)(A)(ii). In response, Springdale argues that the section 1395ww(b) or (d) payment amount, except the amount of the payment under section 1395ww(d)(1), could be reviewed under subsection (1)(A)(i). This argument ignores the broad language of subsection (1)(A)(ii). If Congress intended subsection (1)(A)(i)'s "reimbursement" language to cover every "payment" under section 1395ww(b) or (d) except the payment under section 1395ww(d)(1), Congress certainly could have said so by using fewer words and limiting subsection (1)(A)(ii) to

3. The Secretary agrees that the determination of the hospital's target amount is final to the extent it "may not be changed after the first day of the first cost reporting period * * *." 42 C.F.R. § 412.71(d). But we still must ask whether this is the "final determination" that triggers the right to an appeal under subsection (1)(A)(ii). And, as our discussion illustrates, it is not, for numerous aspects of "the amount of the payment under subsection (b) or (d) of section 1395ww" *cannot* be finally determined until after an NPR is issued. Thus, contrary to the suggestion in *Washington Hospital* that the "additional requirement of finality in the form of an NPR" is a result of the Secretary's unauthorized command, 795 F.2d at 148 n. 11, the issuance of an NPR is the initial and sole "final determination," as Congress used those words in subsection (1)(A)(ii).

4. Congress promulgated section 1395ww(b) as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, § 101, 96 Stat. 324, 331–36 (1982). Section 1395ww(b), the predecessor to the prospective payment system, bases payments to a hospital on the hospital's "target amount," its per patient operating costs for the preceding twelve-month cost reporting period, adjusted for inflation. 42 U.S.C. § 1395ww(b)(3) (1982 & Supp. III 1985). Generally, if a hospital's actual costs are below its target amount, it is paid its actual costs plus a bonus; if its actual costs are above its target amount, it is paid only twenty-five percent of the costs exceeding the target amount. *Id.* § 1395ww(b)(1). Thus, the amount of the payment under section 1395ww(b) cannot be finally determined until the hospital's actual costs are finally determined in an NPR.

"the amount of the payment under subsection (d)(1) of section 1395ww." Instead, Congress completely separated the applicability of subsection (1)(A)(i)'s "reimbursement" language from subsection (1)(A)(ii)'s "payment" language by making subsection (1)(A)(ii) applicable to *every payment* under section 1395ww(b) or (d). Alternatively, Springdale argues that subsection (1)(A)(ii) authorizes administrative review every time a "payment" under section 1395ww(b) or (d) occurs. Congress undoubtedly recognized that a hospital would receive numerous "payments" under section 1395ww(b) or (d). *See, e.g., id.* § 1395*oo* (a) ("any hospital which receives payments"). But Congress only provided for review of "a final determination * * * as to the amount of *the payment*"—not "a payment" or "any payment." *Id.* § 1395*oo* (a)(1)(A)(ii) (emphasis added). Such language does not evince Congress' unambiguously expressed intent to dramatically increase the number of authorized appeals to the Provider Reimbursement Review Board.

Springdale also points to *Washington Hospital's* conclusion that the phrase "the amount of the payment under subsection (b) or (d) of section 1395ww" in subsection (1)(A)(ii) is a term of art that refers solely to the weighted sum of the "hospital's target amount" and the "DRG prospective payment rate" under section 1395ww(d). *See* 795 F.2d at 146–47. The panel apparently based this conclusion on section 1395ww(d)(1)'s use of the words "the amount of the payment" to define the average cost variable of the prospective payment computation. We think this restrictive construction focuses too narrowly on section 1395ww(d)(1) and ignores the remaining language of section 1395*oo* (a) and section 1395ww(b) and (d). First, even if the phrase "the amount of the payment" were a term of art, we cannot ignore what it applies to: Payment "*under* subsection (b) *or* (d) of section 1395ww." 42 U.S.C. § 1395*oo* (a)(1)(A)(ii) (emphasis added).[5] Subsection (b) refers to "the amount of the payment" a hospital shall receive under that subsection. *Id.* § 1395ww(b)(1). And this "amount" *cannot* be finally determined until an NPR is issued. Therefore, even if subsection (1)(A)(ii) applied only to "the amount of the payment," as that phrase is used in section 1395ww(b) or (d),

5. In further restricting subsection (1)(A)(ii), *Washington Hospital* concludes that when Congress referred to the payment "under subsection (b) or (d) of section 1395ww," it meant only to include those payments under section 1395ww(d), and the reference to section 1395ww(b) refers "only to the method for calculating the target amount which is included in subsection (b)." 795 F.2d at 145 n. 6. In reaching this conclusion, *Washington Hospital* fails to observe its "obligation to construe a statute so as 'to give effect, if possible, to every word Congress used.'" *Id.* at 145 (quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)). A court has to ignore the plain meaning and disjunctive effect of the words "under" and "or" to conclude that Congress included subsection (b) as a mere definitional reference. Moreover, Congress had no reason to include, in a section governing appealability, a definitional reference concerning the statute's operational provisions, especially since this reference is already provided at the points of its usage in section 1395ww(d). *See* 42 U.S.C. § 1395ww(d)(1)(A)(i)(I), (ii)(I).

Congress added the reference to subsection (b) in a concurrent resolution after it passed the conforming amendments. 129 Cong. Rec. H1,824, H1,826 (daily ed. April 7, 1983). Two Representatives stated that the concurrent resolution consisted of technical and clerical corrections, not substantive changes. *Id.* at 1,824 (Reps. Pickle and Conable). Based on these legislative statements and circumstances, *Washington Hospital* declines to give credence to the plain meaning of the "under subsection (b) or (d)" language. 795 F.2d at 145 n. 6. We believe it is preferable to rely on the language of the statute. When a statute's language is clear, there is no need to resort to the words of two congressmen or the timing of the legislation. *Cf. Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) ("Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear."). Moreover, when Congress added the subsection (b) language we believe that it was probably *not* intending a substantive change; even absent this language, the reference in subsection (A)(1)(ii) to section 1395ww(d) would encompass payment amounts determinable only after an NPR was issued. Thus, as substantiated by the absence of even a single congressional statement supporting abrogation of the NPR requirement, Congress *never* intended to alter the existing reviewability structure under section 1395*oo* (a).

we would still conclude that this "amount" cannot be finally determined for purposes of administrative review until an NPR is issued. But, more importantly, we do not think Congress intended the phrase "the amount of the payment" to limit what "payment" under section 1395ww(b) or (d) can be reviewed. Unlike other phrases, Congress made no attempt to give the phrase a special meaning by placing it in quotations or defining it. *See, e.g., id.* § 1395ww(d) (defining numerous phrases and placing a variety of defined phrases in quotations). To the contrary, Congress used apparently synonymous phrases throughout related sections, indicating that "the amount of the payment" is not a special or restrictive phrase, but rather, as the language of subsection (1)(A)(ii) indicates, connotes every "payment under subsection (b) or (d) of section 1395ww." *See, e.g., id.* § 1395*oo* (a) ("payments in amounts computed under subsection (b) or (d) of section 1395ww"); *id.* ("such payment"); *id.* § 1395ww(d)(5) ("additional payment"); *id.* § 1395ww(b)(1)(B) ("the amount payable"); *id.* § 1395ww(b)(4) ("the amount of payment"); H.R.Rep. No. 25 at 136, *reprinted in* 1983 U.S.Code Cong. & Admin.News at 355 ("The payment amount" and "the payment"); S.Rep. No. 23 at 47, *reprinted in* 1983 U.S.Code Cong. & Admin.News at 188 ("a payment amount").

Analyzing the statutory language on a broader scale, Springdale argues that because Congress added substantial language to section 1395*oo* (a), it intended to alter the status quo and authorize review under subsection (1)(A)(ii) when a hospital is notified of its hospital target amount. *See Washington Hosp.*, 795 F.2d at 145–46. *Washington Hospital* first reasons that Congress added sixty words to the opening paragraph of section 1395*oo* (a) to eliminate the requirement that hospitals file a cost report prior to obtaining review under subsection (1)(A)(ii). *Id.* The panel concluded that because the old language required the filing of "a required cost report" while the new language required "such reports * * * as the Secretary may require in order to make payment under [42 U.S.C. § 1395ww(b) or (d)]," the new language was intended to nullify the requirement that a cost report be filed as a prerequisite to review under subsection (1)(A)(ii). *Id.* We reach a different conclusion. The opening paragraph's old language requires the filing of a cost report for a hospital to "obtain a hearing with respect to such cost report." Congress added the new language because not every hearing concerning a payment under section 1395ww(b) or (d) is "with respect to such cost report." Instead, certain payments are based on reports filed prior to "a required cost report." *See, e.g.,* 42 U.S.C. § 1395ww(d)(1) (prospective payments); *id.* § 1395ww(d)(5)(A) (outlier cases); *id.* § 1395ww(d)(5)(B) (indirect costs of medical education). Therefore, Congress assured review of the amount of all payments under section 1395ww(b) or (d) by authorizing review "with respect to such payment" (instead of "with respect to such cost report") and premising reviewability on the submission of "such reports * * * as the Secretary may require in order to make payment." [6] If anything, this new language, compared to the old, gives the Secretary more discretion to determine when administrative review is available, and it certainly does not prohibit him from premising review on the submission of a year-end cost report.[7]

6. Our interpretation of the old "cost report" language and the new "such reports" language satisfies *Washington Hospital's* valid concern that because Congress used different language, "we must 'presume that Congress intended the terms to have different meanings.'" 795 F.2d at 146 (quoting *Wilson v. Turnage,* 750 F.2d 1086, 1091 (1984), *vacated on other grounds,* 755 F.2d 967 (D.C.Cir.1985)). The terms *do* have different meanings: "cost report" refers solely to a cost report; "such reports" includes but is not limited to a cost report.

7. In fact, Congress has ordered the Secretary to continue requiring hospitals to submit cost reports for payments computed under section 1395ww(d). 42 U.S.C. § 1395ww(f)(1) (Supp. III 1985). Springdale frankly admits that Congress did not provide for the continued filing of cost reports because it thought they were otherwise not required. Appellee's brief at 20 n. 16. *But see Washington Hosp.,* 795 F.2d at 146 n. 8. Even without this express requirement, Congress implicitly required, by necessity, the filing of a cost report as a prerequisite to receiving

*Washington Hospital* similarly concludes that the addition of subsection (1)(A)(ii) reveals Congress' intent to eliminate the NPR requirement for appeals concerning payments under section 1395ww(b) or (d). 795 F.2d at 146. The panel reasoned that if Congress simply intended to amend the "reimbursement" language of subsection (1)(A) to also include "payments," it could have done so by "adding a word or two to subsection (1)(A)." *Id.* Instead, Congress added subsection (1)(A)(ii), which replaces subsection (1)(A)(i)'s "amount of total program reimbursement" language with the phrase "the amount of the payment under [42 U.S.C. § 1395ww(b) or (d) ]." Because a final determination of the "amount of total program reimbursement" is synonymous with the requirement of an NPR as a prerequisite to appealability, Congress must have intended to omit this requirement from subsection (1)(A)(ii). *Id.* We think *Washington Hospital* incorrectly asserts that Congress could have made a nonsubstantive amendment to section 1395*oo* (a) by simply adding "a word or two to subsection (1)(A)." Subsection (1)(A)(i) refers to reimbursement "for the items and services furnished." Yet, under subsection (1)(A)(ii), the "amount of the payment under [42 U.S.C. § 1395ww(b) or (d) ]" is primarily based *not* on the actual cost of "items and services furnished" but, instead, on the weighting factor of the relevant DRG and on the average cost of treating a Medicare patient. The nonsubstantive conforming amendment Congress intended thus necessitated adding the entirety of subsection (1)(A)(ii). Similarly, Congress did not intend to waive the requirement of an NPR when it broadened the subject matter of the appeal to "the amount of the payment under [42 U.S.C. § 1395ww(b) or (d) ]." As we discussed, some aspects of the "payment" under section 1395ww(b) or (d) are and some are not the subject of a year-end cost report and the subsequent NPR. By broadening the language of subsection (1)(A)(ii), Congress assured review of "the payment under [42 U.S.C. § 1395ww(b) or (d) ]" without limiting review to only those portions of the payment determined in an NPR.

■ *Washington Hospital* describes the conforming amendments to section 1395*oo* (a) as "linguistically complicated" and filled with "semantic twists and turns." 795 F.2d at 147. Because this description seems appropriate, we have difficulty accepting Springdale's contention and *Washington Hospital's* conclusion that Congress has unambiguously expressed its intent through its choice of language. This description of the conforming amendments is consistent with our conclusion that the language is ambiguous, capable of at least two plausible interpretations. In such a case, neither interpretation reflects the "unambiguously expressed intent of Congress." *Chevron U.S.A., Inc.,* 467 U.S. at 843, 104 S.Ct. at 2782. The conforming amendment's ambiguity indicates that Congress has "left a gap for the agency to fill." *Id.* As *Chevron* dictates, a court must recognize its limited role in such a case and defer to a reasonable construction of the statute adopted by the agency charged with administering the statute. *See id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."); *see also Missouri Pub. Serv. Comm'n,* 763 F.2d at 1017 ("Basically, the question is whether the agency's construction of the statute is 'sufficiently reasonable' to be accepted by a reviewing court."). Accordingly, because the language in the conforming amendments to section 1395*oo* (a) is riddled with far too many inconsistencies to support Springdale's contention that Congress unambiguously expressed its intent to do away with the NPR requirement, the Secretary's rational and justifiable conclusion that an NPR is a prerequisite to review under sub-

certain payments under section 1395ww(d). *See* 42 U.S.C. § 1395ww(d)(5). Section 1395ww(f)(1) only reinforces our conclusion that the new "such reports" language includes but is not limited to a year-end cost report.

section (1)(A)(ii) is entitled to substantial deference.

## IV.

Our conclusion is bolstered by the fact that nowhere in the legislative history to the Social Security Amendments of 1983 does Congress express a desire or intent to alter the timing and number of appeals brought by hospitals receiving Medicare payments.

Notwithstanding broad generalizations regarding the entire prospective payment system,[8] the only significant congressional statement regarding the timing of appeals under section 1395*oo* (a) states:

> Under current law, a provider may request administrative review by the Provider Reimbursement Review Board (PRRB) of a final decision of a fiscal intermediary regarding items on the provider cost report, subject to certain conditions. * * *
>
> * * * *In general, the same conditions*, which now apply for review by the PRRB and the courts, would continue to apply.

H.R.Rep. No. 25 at 142–43, *reprinted in* 1983 U.S.Code Cong. & Admin.News at 361–62 (emphasis added); *see also* S.Rep. No. 23 at 57, *reprinted in* 1983 U.S.Code Cong. & Admin.News at 197 (virtually identical statement).

Springdale argues that the "[i]n general" qualifier in this statement implies that, "in particular," certain conditions to review were changed by the 1983 amendments—namely, the NPR requirement does not apply to appeals under subsection (1)(A)(ii). *See Washington Hosp.*, 795 F.2d at 149; *Greenville Hosp. Sys. v. Heckler*, 642 F.Supp. 15, 21 (D.S.C.1985). This argument fails for several reasons. We read the phrase "[i]n general" to denote that no major changes were made, although some minor ones may have been. A nullification of the NPR requirement would constitute a major change. Moreover, it is unnecessary to reject the NPR requirement to satisfy Springdale's "in particular" argument when several specific conditions were in fact altered by the 1983 amendments. *See, e.g.*, 42 U.S.C. § 1395*oo* (a) (review must be "with respect to such payment" instead of "with respect to such cost report"); *id* (review conditioned on the submission of "such reports within such time as the Secretary may require" instead of the filing of "a required cost report"). Finally, despite the alleged importance of the "[i]n general" language, this language, as well as any other language indicating that Congress intended to annul the NPR requirement, was omitted from a subsequently issued House and Senate conference report, which addressed the changes to the provisions for review under Medicare. H.R.Conf.Rep. No. 47, 98th Cong., 1st Sess. 202, *reprinted in* 1983 U.S.Code Cong. & Admin.News 404, 492; *cf.* 129 Cong. Rec. S3,381 (daily ed. March 18, 1983) (Senator DeConcini: "I wish to clarify that, subject to the present jurisdictional requirements for review by the Provider Reimbursement Review Board

8. Congress intended the prospective payment system generally "to improve the medicare program's ability to act as a prudent purchaser of services," "to provide predictibility [sic] regarding payment amounts for both the Government and hospitals," and, "[most importantly], to reform the financial incentives hospitals face, promoting efficiency in the provision of services by rewarding cost/effective [sic] hospital practices." H.R.Rep. No. 25 at 132, *reprinted in* 1983 U.S.Code Cong. & Admin.News at 351. The prospective payment system furthers these goals by using standardized rates and by calculating a "hospital's target amount" based on the hospital's past actual costs, not its present actual costs. The NPR requirement, largely a policy-neutral procedural matter, essentially respects Congress' broad intentions, for its existence does not make the government a less prudent purchaser or the hospitals less able to reap the rewards of efficient hospital practices. But, more importantly, whether Congress' general intent does or does not support our interpretation of section 1395*oo* (a) matters little here. Absent more specific legislative history, "[t]hese generalizations * * * are of little help in our attempt to ascertain the meaning of a precise statutory definition, and they certainly do not dictate that we stray away from the natural reading of [the statute]." *Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd. of Pub. Instruction*, 804 F.2d 1059, 1064 (8th Cir.1986) (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 2392–93, 85 L.Ed.2d 728 (1985)).

(PRRB), judicial and administrative review are available * * *.").

In sum, we are persuaded by the implications of Congress' almost complete silence regarding its changes to section 1395*oo* (a), which Congress passed under the cloak of a "conforming amendment." [9] Nothing in the legislative history indicates that Congress intended this conforming amendment to have the radical effect of wiping out the NPR requirement and significantly increasing the timing and number of appeals brought by hospitals receiving Medicare payments. This, coupled with our reading of section 1395*oo* (a), leads us to conclude that Congress has not unambiguously expressed its intent to abrogate the NPR requirement for appeals under 42 U.S.C. § 1395*oo* (a)(1)(A)(ii). HCFA Ruling 84-1 is a permissible, valid construction of section 1395*oo* (a).

Accordingly, the district court's judgment is reversed.

9. In interpreting another conforming amendment, the Supreme Court implied that when Congress designates an amendment a "conforming amendment" this constitutes valid evidence of legislative intent that the amendment should be read as a nonsubstantive reaction to related legislation. *See CBS, Inc. v. FCC,* 453 U.S. 367, 381-82, 101 S.Ct. 2813, 2822-23, 69 L.Ed.2d 706 (1981). Congress' designation of the section 1395*oo* (a) amendments as "conforming amendments" thus supports our conclusion that Congress did not intend to rescind the NPR requirement.